## JEREMIAH LENEHAN & WIFE *v.* C. M. SPAULDING AND A. A. LAMPREY.

*Distribution of Estates. Heir Absent Fifteen Years, How and of Whom he may Recover. Alien. Probate Court. Notice.* R. L. s. 2245.

1. The intestate died in 1871, unmarried and without issue, but leaving, as it was supposed, as her heirs, only two brothers, but, in fact, also an absent sister, the female plaintiff. The defendants purchased the interest of one brother in 1874; and the Probate Court in 1877 distributed the estate, one-half to one brother, and the other half to the defendants, the assignees of the other brother, in accordance with a statute passed in 1876,—R. L. s. 2245,—which provided that the share of an heir, absent and unheard of for fifteen years, could be distributed to the other heirs, and if the absent person proved to be alive an action was given to recover his share *of any one receiving the same under order of the court; Held,* that the defendants are liable, and that the plaintiff could sustain an action against them to compel payment for her share; and that they are jointly liable, having taken the title jointly.
2. The fact that the intestate was an alien cannot avail as a defence.
3. The amount to be recovered is not the value of the share at the time of distribution, with interest; but the share is chargeable with expenditures necessary for the preservation of the property, and with loss caused by depreciation without the fault of the distributee. The heir should be credited with rents and profits, if any were or might have been received.

4. The notice given by the Probate Court, before the order of distribution, was sufficient; and the finding of the court as to the absence of the heir, &c., is conclusive.

ASSUMPSIT.  Heard on a referee's report, September Term, 1882, Chittenden County, TAFT, J., presiding.  Judgment *pro forma* for the plaintiff.

The referee found that the intestate died in 1871, leaving considerable real estate in St. Albans, consisting of a farm of 125 acres, and tenements, and other buildings in the village.  Also:

" I find that in February, 1877,.the estate of said Catherine Driscoll was distributed by the Probate Court for the District of Franklin to and among John G. Driscoll, a brother of the intestate, and the defendants as assignees of Cornelius Driscoll, another brother, who purchased the interest of said Cornelius sometime in 1874, the said John G. Driscoll taking one-half of the estate, and the defendants one-fourth each:

" That under the decree of said Probate Court the defendants took jointly the farm above named, and the land and tenements between Depot and Catherine streets, and have sold the farm but still own the other premises."  *  *  *  *

" I find that no demand was ever made upon the defendants or either of them for the payment of the claim in suit, except by the service of the writ in this cause, and that until that time they never knew of the existence of any such claim, or that there was any such person as Mary Lenehan.

" There was no evidence before the referee tending to show that said Mary Lenehan was ' absent and unheard of ' for a period of fifteen years or any other period, unless such evidence is contained in the probate record before mentioned and the facts found and reported herein. and the defendants insisted that such record was not competent evidence on this point and objected to its introduction as such, but the objection was overruled.

" I find that Mary Lenehan had been heard from by the brother. Cornelius, within fifteen years prior to the distribution in February, 1877, and that he had corresponded with said Mary and knew her to be living as late at least as the year 1868, and that said Catherine was cognizant within fifteen years previous to her death of the existence and residence of said Mary."

Also:

"That the plaintiff, Mary, was the sister of the said Catherine; that both plaintiffs were born in Ireland, and emigrated to Otsego County, N. Y., in 1851, and have lived there ever since; that said Mary never received anything from said Catherine's estate; that neither of the plaintiffs knew of her death until the spring of 1880, and that this suit was commenced soon after."

Extract from the order of the Probate Court:

"And now on the 10th day of January, 1877, it appears that Catherine Driscoll died without issue, and had neither father or mother, and that the only brothers that are now known to be alive, are Cornelius Driscoll and John G. Driscoll. And it further appears that said intestate had a sister, Mary, who has not been heard from for twenty years—five of said twenty years since the death of said Catherine; and also a sister, Hannah, who has not been heard from for over fifteen years—five of said fifteen· being since the decease of the said Catherine; and also a brother, named Daniel, who has not been heard from for over fifteen years—five of said fifteen being since the death of the said Catherine; and that she had other brothers named William and Thomas, who died before said Catherine, without leaving any issue.

"Therefore the court finds that John G. Driscoll and Cornelius Driscoll are the only brothers and heirs at law of Catherine Driscoll, now alive.

"And the court further finds that Cornelius Driscoll has sold and assigned all of his interest in said Catherine's estate to Cyrus M. Spaulding, of Jericho, and that personal notice was duly given to said John G. Driscoll and C. M. Spaulding agreeable to law.

"Therefore the court does decree and order that a committee of three judicious and disinterested persons be appointed to divide the real estate of the said Catherine Driscoll, deceased, to and among John G. Driscoll, of St. Albans, and Cyrus M. Spaulding, of Jericho, being the heirs and representatives of heirs, by purchase, of the said Catherine Driscoll, deceased, in proportion following, that is to say: To the said John G., one equal half of said estate, and to said Cyrus M., one equal half of said estate, he being grantee of Cornelius Driscoll, and that a warrant duly issue to said committee."

The probate record, after setting forth the appointment of the committee, the payment of debts, &c., and a description of the real estate to be divided, continued:

"And whereas it has been made to appear to said court that John G. Driscoll and Cornelius Driscoll (and said Cornelius has sold and assigned his interest in said estate to Cyrus M. Spaulding and A. A. Lamprey) are all the legal heirs and representatives of heirs of the said Catherine Driscoll, who by law are entitled to said real estate, the Probate Court doth, therefore, hereby decree the real estate of the said deceased to the aforesaid heirs and representatives of heirs, in the following proportions, to wit: To John G. Driscoll one equal half of said real estate, to said Cyrus M., one equal fourth of said real estate, to said Lamprey, one equal fourth of said real estate."

The record also contained the report of the committee, which report set forth the appraisal of the various pieces of land, and the parts thereof set to the several persons entitled, giving the land to said John G., Cyrus M., and A. A. Lamprey:

"To have and to hold to the said John G. Driscoll, Cyrus M. Spaulding, and A. A. Lamprey, their respective heirs, executors, administrators, and assigns, each, the respective parcel of said real estate so described and set out to each as aforesaid in severalty, to their sole use, benefit, and behoof forever."

The record also contained the order of the Probate Court confirming the report of the committee. The referee reported that he was unable to find that said Mary was the only absent heir.

*E. R. Hard*, for the defendants.

The Act of 1876, being in derogation of the common law, and, if construed to reach a case like the present, harsh in its operation, should receive a strict construction; and the remedy should not be extended to cases not clearly within the letter and spirit of the statute. Sedg. Stat. Law, 267; 10 Minn. 386; 13 Ib. 326; 56 Barb. 54; 3 N. H. 33; Ross, J., in *Pitkin* v. *Burch*, 48 Vt. 521.

The plaintiffs must show a compliance with all the condi-
tions of the act, and the existence of every fact material to
the support of such a proceeding. But the referee not only
fails to find that Mrs. Lenehan was absent and unheard of,
but finds that she was *not*. The plaintiffs are not aided by
the probate records, because the recital in the record of
facts not material to the jurisdiction is not evidence of
those facts, much less conclusive. REDFIELD, Ch. J., in 15
Am. Law Reg. 213; 2 Vt. 329; 31 Vt. 673; 1 Greenl. Ev. s.
543. Notice should have been given to "*all persons inter-
ested*"—G. S. s. 14, p. 411—but here notice was given only
to the "*heirs* of said deceased, their attorneys, or agents,
&c." By the Act of 1876, the court could "order the share
of such absent person to be distributed among * * * *
the *heirs* of such deceased person."

The intention of the legislature to limit the liability im-
posed by the act in question, to *heirs* and not to extend it to
parties who had purchased for a valuable consideration, is
manifest not only from the fact that heirs only, are men-
tioned as subject to the liability; but from the language
used in other parts of the same section. To sus-
tain the action, it must be shown that Mrs. Lenehan
is the *only* "absent" heir; otherwise, there is no rule for
estimating the damages. The grantees might be called
upon by successive claimants. *Hatch* v. *Hatch*, 21 Vt. 450.
The defendants were improperly joined. A demand was
necessary. 15 Vt. 443; 44 Vt. 325. The defendants acquired
their interest by purchase before the Act of 1876 was passed.
The intestate was an alien, and could not transmit by de-
scent title to land. 6 Pet. 113; 1 Wash. R. P. 63; 3 Ib. 44,
234.

*Edson, Cross & Start*, for the plaintiffs.

The Probate Court had jurisdiction to decide who was
heir, and what proportions each heir should take; and its
decision as to these questions is conclusive. The legal effect

of the decree in this case was to vest the title to one-half of the estate in the defendants, as the representatives of Cornelius, one of the heirs, and the other half in John, another heir. *Grice et ux.* v. *Randall*, 23 Vt. 239; *Stone* v. *Peasley's Est.* 28 Vt. 716.

The defendants, being parties to the decree, taking their title under it, it is submitted that they are bound by the findings therein made, which were necessary to authorize the action of the court, whether such findings are recited in the decree or not. Among these are the fact that Mrs. Lenehan was "absent and unheard of," although the report finds that Cornelius had heard from her within the twenty years. To hold otherwise would be to hold that no valid decree could ever be made. For, if Mrs. Lenehan was in fact alive, somebody must have known it; and if the knowledge of Cornelius, who is not a party to the decree, is fatal, the knowledge of any other stranger would be equally so. Also, the fact that the applicant had complied with the order of notice, "by giving personal notice to all persons interested in the estate," and that notice by publication was given. It would be a strange doctrine to hold that a party to this decree could assert its invalidity for the purpose of defeating the liability imposed by the statute, and that its validity cannot be questioned to affect the title acquired under it. The claim that this action can only be sustained against an heir, who takes under a decree and not against the assignees of an heir, is unfounded. A person is not liable because he is heir, but because he takes under the decree, and unless he takes under the decree there is no liability. Suppose this action had been brought against Cornelius. His answer would be that he sold his interest only, and not Mrs. Lenehan's, and that he is not at fault because the defendants took her share.

The opinion of the court was delivered by

ROYCE, Ch. J. This action was brought under No. 82 of

the laws of 1876, now sec. 2245 of the R. L., to recover compensation for the share which the female plaintiff was entitled to in the intestate estate of Catherine Driscoll, and which was distributed to the defendants by an order of the Probate Court on the 17th day of February, 1877.

Before the passage of that law there was no statute remedy for an heir of an intestate estate who had been left out in the distribution of the estate to recover his share, or compensation therefor. That law provides, that where a person entitled to a distributive share of such an estate is absent and unheard of for fifteen years, five of which are after the death of the intestate, the Probate Court may order such share to be distributed among his lineal heirs, if he have any; otherwise among the heirs of such deceased person. It is claimed by the defendants that the requirements of the law were not so observed by the Probate Court as to justify the making of such an order.

The law required that before any such order was made the court should cause notice to be given as notice is given on the settlement of an administrator's account, and such other notice, by publication or otherwise, as the court might deem proper. The notice required before the settlement of an administrator's account is to be given personally to such persons as the Probate Court should judge to be interested, or by publication under the direction of the court of the time and place of allowing the same. R. L. s. 2106. The record of the Probate Court shows that personal notice was ordered to be given to the heirs of Catherine Driscoll, if living within this State, of the time and place when and where the application for distribution would be heard, and that such notice was given, and that public notice was given by publication in the St. Albans *Messenger*. The notice thus shown to have been given was legally sufficient.

It was necessary that the court should find that the absent heir had been absent and unheard of for fifteen years, five of which were after the death of the intestate. That fact,

and that notice had been given, it appears was found by the Probate Court.

It is claimed that these findings, and the recitals that appear in the record, are not conclusive. Probate courts in this State are courts of record; and judgments rendered by them upon matters within their jurisdiction to determine, unappealed from, are conclusive. To give the court jurisdiction over the absent heir's share in the estate, it was necessary, after proper notice given, that the fact of the absence of the heir for the time specified should be found by the court; so that the court in making such finding was discharging a duty imposed by the law, and its finding must be held to be conclusive. The court, then, having acquired jurisdiction over said share, the order made divested the heir of all legal claim to the estate, and vested the same in the defendants. *Grice* v. *Randall,* 23 Vt. 239; *Stone* v. *Peasley's Est.* 28 Vt. 716.

The defendants having elected to have the share of the heir distributed to them jointly, and having taken the title jointly, cannot now excuse themselves from joint liability.

It is also claimed that the defendants, having acquired their interest in the estate of Catherine Driscoll by purchase, before the passage of the law of 1876, their rights are not affected by that law. The answer to this claim is, that they acquired their title under the order of the Probate Court made after the passage of that law, and made in pursuance thereof; and the liability is imposed upon those "to whom such share has been distributed under such an order."

The defendants cannot avail themselves, as a defence, of the fact that the intestate was an alien. She had the undoubted right to purchase and hold lands, and if forfeited on account of her alienage the forfeiture was to the State; and the State alone could assert a right to them. *Gilman* v. *Thompson,* 11 Vt. 643; *Cross* v. *DeValle,* 1 Wall. 5.

The title to the share to which Mary Lenehan would have been entitled having vested in the defendants, a right of

action was given her against them to compel payment therefor; and the important question is, what shall that compensation be?

The language of the law is: " He shall be entitled to his share of such estate, notwithstanding such distribution, and may recover in an action on the case for money had and received any portion thereof which any one received under such an order." The County Court estimated that compensation to be the value of the share as it was ascertained at the time of distribution, and interest on the same from that date.

It will be observed that the time when the value of such share is to be estimated is not fixed by the law. The law in that respect is ambiguous; and in construing it we are to ascertain, if we can, what the design and intent of the framers was. It is evident to us that the intention in thus protecting the interests of absent heirs was to place them in as advantageous a position as they would have been in if the estate had not been distributed. If an executor or administrator, while he is administering upon an estate, expends money upon it which is necessary to its preservation and protection, and which it is for the interest of the estate to have expended, the expenditures become a charge upon the estate and the shares to which the heirs are entitled are proportionally diminished; so that if this estate had not been distributed, the share of Mary Lenehan would have been chargeable with its proportion of any such expenditures made upon it while it was being administered.

The adoption of the rule that the value of a share is its value as ascertained at the time of distribution, as an arbitrary one, and compelling distributees to pay upon that basis, would frequently result in great injustice. The property may be wholly lost, or it may depreciate largely in value without the fault of the distributee, after distribution made and before the absent heir appears and demands compensation. To compel the distributee to bear the loss under

such circumstances would be inequitable and unjust. It is to be borne in mind that the defendants acquired the title and came into the possession of the share in controversy rightfully, and without knowledge that there was any opposing claim to it; and the expenditures they have made upon the property are presumed to have been made in good faith and in the belief that they had an indefeasible title.

If the share of the heir has appreciated in value he should be entitled to the benefit of such appreciation; if it has become less valuable, without the fault of the distributee, the loss in value should be borne by the heir. If rents and profits have been or might have been derived from the use of such share, the heir is entitled to them. If necessary and proper expenditures have been made upon the property, the heir should be charged with his proportion of such expenditures in reduction of the amount which the distributees are compelled to pay him. Such a rule of accountability will effectuate what seems to us to be the spirit and intent of the law, and will work out just and equitable results.

It is evident that no proper judgment can be rendered upon the facts reported. The judgment is reversed, and cause remanded in order that it may be recommitted for specific findings, as to the amount, kind, and value of the repairs made upon the property by the defendants, and the necessity for making them, and as to any other expenditures made upon, or for the care and preservation of the property; and the amount that has been or might have been received by the defendants for the use of the same, and its value at the time this suit was brought.

Lenehan *v.* Spaulding.

Dissenting opinion by

Ross, J. I am unable to concur in the opinion and decision in regard to the amount that the plaintiffs, under the statute, are entitled to recover. I concur in the other parts of the decision. I agree that "the order made," by the Probate Court February 17, 1877, "divested the heir" (the plaintiff wife) "of all legal claim to the estate, and vested the same in the defendants." The statute, giving the plaintiffs the right to recover for the share of the estate, of which they have been divested by the order, of those who thereby received the same, or a portion thereof, reads: "But if such absent person proves to be alive he shall be entitled to his share of such estate, notwithstanding such distribution, and may recover in an action on the case for money had and received any portion thereof which any one received under such order." I cannot regard this language as ambiguous. It plainly intends that the property shall be valued as of the time of the order; that the absent heir may recover in money for so much of his share as the defendants have received of the same by virtue of the order. He may recover it the next day after the order is made. The defendants take his property—because it turns out that he is alive—by virtue of the order, and thereby become legally liable to pay him for it, at once. To my mind it is a misconstruction of the statute, its intention and purpose, to hold that such distributee holds such heir's share, after such order, in trust like an administrator or executor, and can charge and be allowed for improvements, and must account for the rents and profits received, or that he is to be allowed for the depreciation, or charged with the rise, in its value, after such order, when called upon by the heir to pay for the same. The opinion, to my mind, is incongruous and illogical, in that it holds that the order of the Probate Court divested the heir of all legal claim to the estate, and vested the same in the defendants, and at the same time, holds, that the defendants hold the same in trust for the heir, accountable for rents and profits, and are to be allowed for improvements, depreciation in value, and for care of the same; thus treating the property as still the property of the heir, notwithstanding the order of the Pro-

bate Court. It is the first time that I have known are to be legally determined, and announced, that a party, who had legally deprived another of his property, and himself become legally possessed thereof so that he was legally bound to make compensation therefor, when sued for such compensation, could charge the original owner of the property, in reduction of the compensation, for taking care of the property, or for improvements that he had made upon such property, after it had become his own, or that he should account for the rents and profits he had made in managing the property, after it became his own. The statute provides, to my mind, a plain and simple method of determining the compensation recoverable,—the value of the property, as it was when taken, under the statute, from the plaintiff and given to the defendants. This is a simple and certain rule of compensation. I see no necessity of complicating it with improvements, fluctuations in value, rents and profits, care, &c., involving a long accounting, and much uncertainty, all subsequent to the time the property passed under the law absolutely from the plaintiffs to the defendants. Suppose the distributive share of such absent heir is money. Is the person receiving the same under the order of the Probate Court to be allowed for care in investing the same and to be charged with the interest he receives, and if he makes a bad investment and loses the whole or a part of it, is the loss to fall on the absent heir? I cannot give my assent to any such holding or any such construction of the statute. I think the judgment of the County Court should be affirmed.

ROWELL, J. I am entirely of the same opinion. The two holdings, that the defendants are the absolute owners of Mrs. Lenehan's share but that they must account therefor as though they were trustees of it, are inconsistent, and cannot stand together; for one cannot sustain both those relations to the same property at the same time. I think the defendants are *quasi* purchasers of the property, and liable for only the value thereof at the time they became such, with interest thereon, which constitutes the purchase piece.