CLARK S. KEELER *v.* *Executors of* ABNER KEELER.

*Wills. Probate Court. Jurisdiction.*

The jurisdiction of the probate court in the settlement of the estate of a deceased person, exists so long as there is any occasion for its exercise, and until there is a full and complete settlement and distribution of the estate.

A testator devised certain land to his daughter for life, and then followed this provision in the will, viz.: "After the decease of my said daughter I do give said land to my male heirs at law, who may then live in South Hero, aforesaid." The daughter enjoyed it during her life, and at her death the executor under the will took charge of it and instituted proceeding in the probate court to have it disposed of according to the provisions of the will. *Held*, that the matter was within the jurisdiction of the probate court.

The interest in this property subject to the life estate of the daughter must be regarded as undistributed property of the estate in the hands of the executor to be by him disposed of after her death, under the decree of the probate court determining who are entitled thereto, under the will of the testator.

The intention of the testator and the clear meaning of the words in said clause in the will, was, under the circumstances proper to be regarded in giving construction to wills, to limit the devise to such of his male relations living in South Hero, as would be his heirs at law, supposing them to be all the relations the testator had on earth, therefore in construing the clause, all relations excluded by the terms of the will may for this purpose be regarded as though they had no existence.

Keeler *v.* Ex'rs of Keeler.

Evidence that the testator got some of his male relations to come to South Hero to live and gave them farms there with the well known and avowed intention of perpetuating his name there, had no tendency to show what his intentions were as to the disposition of the property now in question, and was properly excluded.

THIS was an appeal from a decree of the court of probate, distributing certain real estate in North Hero among the grand nephews of Abner Keeler, deceased. Trial by court, August Term, 1864, ALDIS, J., presiding.

The court found the following facts :—Abner Keeler, the testator, died in 1852; at his decease he had issue, one daughter, Mrs. Wadsworth, living, and one grand daughter, Julia Keeler, ( the daughter of his deceased son William,) who is still living at Burlington, Vermont ; his sons, John and William, and all his brothers had died before him. At the time he made his will, and at the time of his decease, he had living in the town of South Hero, two nephews, Clark S. Keeler, (the appellant,) and Philip Keeler, and a niece, Mrs. Hoyt. By the will he devised to his daughter, Mrs. Wadsworth, for life, certain lands in North Hero, and at her decease they were to go to his "male heirs at law who may then live in South Hero, aforesaid."

Mrs. Wadsworth died in the spring of 1863. At the time of her death there were living in South Hero the following collateral relations of Abner Keeler : Clark S. Keeler, (the appellant,) who was the nephew of Abner Keeler ; two sons of Clark S. Keeler, ( who were therefore the grand nephews of Abner Keeler ;) three sons of Philip Keeler—Philip was the brother of Clark Keeler, and was living in South Hero when Abner Keeler made his will, and when he died—but died there in the year 1853. His three sons, (the grand nephews of Abner Keeler,) have always lived in South Hero since their father's death, and are still living there. Mrs. Hoyt a sister of Clark S. Keeler, had had one son (therefore a grand nephew of Abner Keeler) living in South Hero when Mrs. Wadsworth died.

The probate court distributed the lands in question equally to Clark S. Keeler, his two sons, the three sons of Philip and the son of Mrs. Hoyt, to each one-seventh as being the male heirs at law of Abner

Keeler, living in South Hero at the decease of Mrs. Wadsworth. Clark S. Keeler, the nephew, claimed the whole of the land in question under the will, and in exclusion of the grand nephews above named.

Upon the facts as heretofore stated the court held, that the words in the will, "my male heirs at law who may then" (at Mrs. Wadsworth's decease,) "live in South Hero," meant Clark S. Keeler, the nephew ; and that the grand nephews do not come within the terms of the will, therefore the decree of the probate court should be revised, and the land be all set to Clark S. Keeler. To this decision the defendants excepted.

The appellant, in due time, upon the trial objected to the jurisdiction of the court upon the ground that the executors named in the will had not the right to bring this petition to the probate court. It appeared that the estate of Abner Keeler had been settled, and his real and personal property distributed, according to the will and agreement of the parties, among the legatees named in the will ; that the executors making this application were the ones named in the will, and that they had not resigned or been formally discharged from their office.

The appellant objected that they had fully performed and discharged all the duties and functions under the will and had no right to act in this matter.

The court, *pro forma*, overruled this motion to dismiss for want of jurisdiction. To this the appellant excepted.

Other facts are stated in the opinion.

*George F. Edmunds*, for the appellant.

*G. Harrington*, for the defendants.

The opinion of the court was delivered by

PIERPOINT, Ch. J.    The first question arises on the motion to dismiss the case for want of jurisdiction in the probate court.

It is claimed on the part of the plaintiff, Clark S. Keeler, that the

estate of the testator had been fully settled, and the power of the probate court over the subject exhausted.

It is true the debts of the testator had been paid, the property of the estate, except that now in controversy, had been divided and passed over by the executor, to the persons entitled to the same under the will. The property in question had passed into the hands of Mrs. Wadsworth, who, by the terms of the will, was entitled to the same during her life. Therefore the action of the probate court, and the executor, in the premises was full and complete, and their powers were exhausted. Was such the case in respect to the property in question, after the death of Mrs. Wadsworth? We think not. The probate court has, primarily, jurisdiction of all questions relative to the settlement of the estates of deceased persons, whether testate or intestate, and among its powers is that of determining who are entitiled, under the provisions of any will, and to what they are entitled, also who are the heirs at law of any deceased person, and the proportion to which they are entitled respectively, and this jurisdiction it would seem must necessarily exist in the probate court so long as there is any occasion for its exercise, and until there is a full and complete settlement and distribution of the estate.

In this case no decree of the probate court had been made, and none could be made, determining who was entitled to the property in question under the will, until after the death of Mrs. Wadsworth. The words of the will are that, "after the decease of my said daughter" (Mrs. Wadsworth,) "I do give said land to my male heirs at law who then live in South Hero, aforesaid," of course, until after Mrs. W.'s death it could not be known who, if any, of the male relations of the deceased would then be residing in South Hero. If no male relation of the deceased had then been residing in South Hero, then there would have been no person to take under the will, and the property would have passed to the heirs at law generally, as intestate estate; and must have been distributed under the decree of the probate court determining who were the heirs, and the proportions to which they were entitled. But as it is conceded that there are persons residing in South Hero who are entitled to the property, and the only question being as to which of several are so entitled,

35

we think it is a matter coming clearly within the jurisdiction of the probate court to determine, and that such court has not exhausted its jurisdiction, or lost it by the intervention of any circumstances that appear in the case, that might render its exercise unnecessary.

The interest in this property subject to the life estate of Mrs. W. we think must be regarded as undistributed property of the estate in the hands of the executor to be by him disposed of after her death, under the decree of the probate court determining who is entitled thereto, under the will of the testator.

On the death of Mrs. W. the executor took charge of the property and instituted proceedings in the probate court to have it disposed of according to the provisions of the will, and it is by an appeal from the decree of that court, that the case is brought here, the property having never been in the possession of any of the claimants.

The cases cited by the plaintiff in support of the motion are not at variance with the view we take of this question. In *Hubbard* v. *Ricart*, 3 Vt. 207, the plaintiff held the title of all the heirs of Arad Hunt, who died siezed of the premises. The defendant, who was a stranger to the title, trespassed upon the premises, and the plaintiff brought his suit. The court held that, as under the circumstances of the case there was no necessity for a decree assigning the property of said Hunt to his heirs, and as no administrators interfered, the action could be maintained without having such a decree. In *Stone, Executor of Fuller*, v. *Griffin*, Fuller, the plaintiff's testator, had devised the property in question to the methodist church in Charlotte, under whom the defendant held. The probate court decreed the property to the church according to the will, and the same was set off to the church, by a committee appointed by said court for that purpose ; the plaintiff then brought his action of ejectment to recover the property, claiming that the decree was void ; the court held that the action of the probate court had divested him of all right to the property, and that he could not maintain the action. The case of *Abbott* v. *Pratt*, was like *Hubbard* v. *Ricart*, and so far as this question was concerned was decided on the authority of that case.

In no one of these cases was the jurisdiction of the probate court under consideration, but the whole extent of the decisions is, that in a certain class of cases the parties can maintain their actions without its exercise.

The motion to dismiss was properly overruled.

Upon the trial of the case in the county court the defendant claimed that it was the intention of the testator, by his will, to give the property in question to such of his male relatives as should be residing in South Hero, at the decease of Mrs. Wadsworth, and for the purpose of proving this intention, offered to show by parol "that in 1850 the testator, having a large real and personal estate in South Hero, and having no lineal male heirs, went to Ridgefield, Connecticut, and pursuaded Clark S. Keeler and Philip Keeler, his nephews, and his neice, Mrs. Hoyt, to remove to South Hero, upon the expectation of having a portion of his property; that upon their removal to South Hero, in 1850, he put each of them upon a farm in said town, which he owned; that they lived respectively upon the farms on which he placed them, until he died, and that by his will he devised to each of them the farm upon which each of them so resided; that he did this with the avowed and well known intention of perpetuating his name and family blood in South Hero, as well as from affection to his relatives." This evidence was objected to by the plaintiff, and was excluded by the court.

This evidence, we think, was properly excluded. Conceding all to be true that was offered to be proved, it has no tendency whatever to establish the position in support of which it was offered. The intention of the testator in respect to those relatives, as manifested by his acts and declarations, he seems to have fully accomplished and perfected, and what he had done, or the intention with which he did it, can throw no light upon the question as to what his intentions were as to the disposition of the property now in question.

The question then arises what is the construction that is to be put upon that clause in the testator's will which is now in controversy? In determining this, we are to look at the whole will, the situation of the testator, and all those surrounding circumstances which may

legally be considered in the construction of all written instruments, so far as the case finds that they existed, and, from the whole, ascertain what the testator intended by the words used, and having ascertained that, so construe those words as to carry out that intention.

By the will the testator gives the land in question to his daughter, Judith Wadsworth, during her natural life, and then he says, " and after the decease of my said daughter I do give said land to my male heirs at law, who then live in South Hero." What did he intend by those words? In considering this question the conceded facts may be borne in mind, that the testator had through life been an active, accurate business man; that he wrote his will himself; that he was an intelligent man, and understood the use and import of language, is apparent to any one who reads the will. At the time he made his will, and at the time of his death he had no male issue. His daughter, Mrs. Wadsworth, and a grand daughter, the child of a deceased son, were his heirs at law. After the death of Mrs. W., the grand-daughter surviving her became the sole heir at law of the testator, so that at no time, when the will was made, or since, has there been any person that could properly be called the male heirs at law of the testator. What then did he mean by the words male heirs at law, who then live in South Hero? These words by their natural import exclude (1st.) all his female relatives of every degree of relationship; (2d.) all his male relatives that live out of South Hero. It is clear then that in seeking for the persons to whom he intended this property should go, we are confined to his male relatives in South Hero. As between them, what is the meaning of the words "heirs at law?" Did the testator mean thereby to refer to all such male relatives? or to such of them as among themselves would occupy the position of heirs at law? We think it was the intention of the testator, and that such is the clear meaning of the words used, to limit the devise to such of his male relations living in South Hero as would be his heirs at law, supposing them to be all the relatives the testator had on earth, and that in construing the clause in controversy so as to carry out what we think the intention of the testator

was, all of those relatives, who, by the terms of the will, are excluded may for this purpose be regarded as though they had no existence.

Under the will thus construed, it is conceded, that Clark S. Keeler, the plaintiff, is the person and the only person who is entitled to the property in question.

The judgment of the county court is affirmed, and the result will be certified to the probate court.