IVAN A. SPARROW *v.* CHARLES A. WATSON ET AL.

October Term, 1913.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 13, 1914.

*Probate   Court—Decree   of   Distribution—Conclusiveness—Collateral   Attack—Construction.*

The probate court has original, exclusive, and plenary jurisdiction in the settlement of decedents' estate, and so its decrees distributing such estates, unappealed from, are conclusive and not subject to collateral attack, at least in the absence of proof of lack of due notice.

A decree of the probate court in the settlement of a decedent's estate, though unappealed from, is conclusive only of those matters directly passed upon by the court.

Where the contrary does not appear of record, it will be presumed, especially after the lapse of many years, that a proceeding of the probate court, culminating in a decree distributing a decedent's estate, was regular and on due notice.

It is the duty of the probate court in decreeing the distribution of a testate estate to determine and adjudge the kind of estate taken by a devisee under the will, and in construing such decree it will be presumed that the court did that duty.

A statement in an opinion of the Supreme Court deliberately passing upon a point argued by counsel, though its decision was not essential to a disposition of the case, is a "judicial dictum," as distinguished from a mere *obiter dictum*, and is authoritative.

Where a testator divided his realty into thirty shares and devised his widow "twelve shares out of my real estate together with one-half of the wood house," and provided that those twelve shares at her death should "descend to my two daughters in equal proportions," and the decree of the probate court, distributing the real estate among the devisees, decreed to the widow "twelve-thirtieths thereof, together with one-half of the woodhouse which was not in such proportions," to have and to hold the same to the said widow, her heirs, executors and administrators, "agreeably to the provisions of said will," that decree recited the court's judgment as to the kind of estate that the widow took under the will, and the concluding words, "agreeably to the provisions of said will" mean only that the court determined and adjudged the estate decreed to the widow to be the one devised to her, and so the decree, not having been appealed from, is conclusive that the widow took a fee in her portion of the realty and not a mere life estate.

In construing a decree of the probate court making final distribution of a testate estate, no consideration should be given to the report of commissioners appointed to set out and divide the realty among the devisees, though that report was confirmed by the probate court, for the jurisdiction of such commissioners is confined to dividing and setting off to the devisees their respective shares, without meddling with the question of what estates are taken therein under the will.

PETITION for partition, Washington County, March Term, 1913, *Fish*, J., presiding. Trial by court. The court construed the will of Lorton Hathaway and the decree of the probate court to give a life estate to the widow, with remainder to the daughters in fee, and rendered judgment for partition. Petitionees excepted. The opinion states the case.

*R. M. Harvey* and *Erwin M. Harvey* for the petitionees.

*F. L. Laird* and *H. C. Shurtleff* for the petitioner.

TAYLOR, J. This is a petition for partition. Lorton Hathaway in his lifetime owned a certain farm in a town in this county. He died testate prior to April 29, 1863, and left surviving a widow, Hannah W. Hathaway and two daughters. By his will he disposed of said farm in three parcels, in the manner hereinafter recited, twelve-thirtieths to his widow, eight-thirtieths to his daughter, Mary Jane Jacobs, and ten-thirtieths to the other daughter, then Emma J. Hathaway, now Emma J. Watson, one of the petitionees. The will of Mr. Hathaway was admitted to probate, distribution of his estate thereunder was decreed, commissioners were appointed to divide and set out the respective shares of said farm to the widow and daughters and said commissioners made their report Apr. 29, 1863. At the time said report was made the widow had remarried and was then Hannah W. Ormsbee.

The question here involves the title to the share set off to the widow. Charles A. Watson, one of the petitionees, owns the share set to Mary Jane Jacobs and Mrs. Watson owns the part set to her. Whether either defendant claims an interest in the land in controversy does not appear, although, if the petitioner's claim is well founded, Mrs. Watson probably owns the other undivided half. The petitioner claims title to an undivided six-thirtieths of said farm, being one-half of the share set out to the widow, by virtue of a quit-claim deed from Mary Jane Jacobs and her husband, Carlos S. Jacobs, dated July 27, 1909. The petitionees deny that the petitioner has title to the land in question. The right of Mrs. Jacobs in this land is predicated upon the claim that under Mr. Hathaway's will his widow took only a life estate with remainder over to the two daughters in equal portions. The widow had deceased before the delivery of the deed from Mrs. Jacobs and her husband to the petitioner, and unless the widow took a life estate only in the share set to her with remainder over to Mrs. Jacobs and Mrs. Watson, so far as appears, Mrs. Jacobs had no interest in the land conveyed to the petitioner and he is without right in the premises. Evidence of what was done with Mrs. Ormsbee's share in the settlement of her estate was offered and excluded under exception. The question then resolves itself into this: What estate did Hannah W. Hathaway take by the decree of the probate court, under her husband's will?

So far as necessary for a consideration of this question, Mr. Hathaway's will provided: "1. First, after the payment of my honest debts and funeral charges I give to my beloved wife, Hannah W. Hathaway twelve shares out of my real estate together with one-half of the wood house and all my household furniture. 2. I give to my daughter, Mary Jane Jacobs, eight shares of my real estate, I also give to my daughter, Emma J. Hathaway ten shares of my real estate making thirty shares in the whole, the twelve shares given to my wife Hannah Hathaway at her decease to descend to my two daughters in equal proportions, the above named legacies given to my daughters, to descend to their children in equal portions at their decease."

So much of the decree of the probate court as relates to the distribution of the real estate is as follows: "There remains of said estate, the home farm of said deceased, being for division among the devisees of said deceased, to wit: Hannah W. Hathaway, Mary Jane Jacobs, wife of Carlos S. Jacobs, and Emma J. Hathaway, in the following proportions that is to say, to the said Hannah W. Hathaway twelve-thirtieths thereof, together with one-half of the wood house which is not included in said proportions. To the said Mary Jane Jacobs eight-thirtieths of said farm (exclusive of wood house). To the said Emma J. Hathaway ten-thirtieths thereof (exclusive of wood house).

To have and to hold the same in the several proportions aforesaid to the said Hannah W. Hathaway, Mary Jane Jacobs and Emma J. Hathaway, their respective heirs, executors, administrators, agreeably to the provisions to said will."

Under warrant of the probate court commissioners appointed to divide said farm set out the respective shares in separate parcels, as appears from the report of their doings returned to the probate court. After describing the several parcels, their report concludes, "To have and to hold the same to the said Hannah W. Ormsbee, Mary Jane Jacobs, and Emma J. Hathaway in the several proportions as aforesaid and to their respective children agreeably to the provisions of the last will and testament of the said Lorton Hathaway deceased."

From the proceedings in the probate court on the estate of Mr. Hathaway no appeal was taken.

The principal question presented relates to the effect of the decree of distribution. Petitioner's counsel claim that the will is open for construction; and that under the will the widow took

24

a life estate only, with remainder to the daughters in fee in equal proportions. Defendant's counsel contend that the decree is conclusive and that under it the widow took the share assigned to her in fee. It is clear that the question relates to the construction of the decree and not of the will standing alone. P. S. 2710 confers upon the probate court the exclusive original jurisdiction of the estates of deceased persons. *Hotchkiss* v. *Ladd's Est.,* 62 Vt. 209; *Hulburt Brothers* v. *Hinde et al.,* 86 Vt. 517. Our probate code has grown up into a system by itself the leading idea of which is to confer upon the probate court plenary and exclusive jurisdiction in the settlement of estates. *Powers* v. *Powers' Est.,* 57 Vt. 49. The probate court having exclusive original jurisdiction, its decrees are conclusive and not subject to collateral attack; *Ward* v. *Church,* 66 Vt. 490; *Harris et al.* v. *Harris et al.,* 79 Vt. 22; *In re Peck's Estate,* 87 Vt. 194, at least in the absence of proof of want of notice, and while the record does not show notice to the petitioner's grantor it will be presumed, *Sparhawk* v. *Buel's Admr.,* 9 Vt. 41, especially as after such a lapse of time (about fifty years) the proceedings leading up to the decree must be presumed to have been regular. *Giddings* v. *Smith,* 15 Vt. 344.

The conclusive character of such decree is illustrated in the unreported case in Orleans County referred to in *Stone* v. *Peasley's Est.,* 28 Vt. 716, in which it was held that a decree of distribution of real estate, exclusively to the heirs of the full blood, taking no notice of the half-blood heirs in the same degree, who were at law equally entitled to share in the estate, could not, after possession had been taken by those to whom it had been decreed, be so modified even on subsequent petition as to give the property to those originally entitled to it, on the ground that the decree, and possession taken under it, put the title beyond the control of the probate court.

The later case of *Leavins* v. *Ewins et al.,* 67 Vt. 256, is directly in point. This was an appeal on a petition to the probate court praying for the correction of an error in its decree distributing the estate of one Ewins under a will. In 1874 the probate court had decreed the residue of the personal estate of said Ewins *in equal proportions* to three legatees. In 1893, after the death of one of the legatees, the petition was brought seeking to have the words "in equal proportions" stricken from the decree to make it conform to the provisions of the will. The

court, by Start, J., said: "In making the decree of 1874 the court undertook to decree the estate according to the legal effect of the will. It had jurisdiction to make a decree distributing the estate and its decree unappealed from was binding upon all parties. The construction given to the will was a legal construction, and became the law governing the distribution of the estate. If there was an error in the distribution of the estate, it was an error of law; and the remedy was by appeal to the higher Court. No appeal having been taken, the law as there interpreted became the law of the case. The construction thus given to the will was a judicial construction. Property rights vested under it; and for error in that construction, they cannot now be disturbed."

While in *Stowell* v. *Hastings, Exr.,* 59 Vt. 494, the Court, in disposing of the appeal, construed the will, that case is entirely in harmony with the others cited. That was an appeal from the decree of the probate court allowing the account of the defendant as executor of the will of one Stowell. In 1872 the executor settled his account in the probate court and the court ordered him to pay a certain sum to the testator's granddaughter and the balance of the estate "to the widow of said deceased in accordance with said will." The executor paid the sum specified to the granddaughter and delivered the residue of the estate to the widow who, just before her death, disposed of the property by sundry gifts. It was claimed that, by the will, she did not have the right of disposal, and this was the question in controversy on the appeal. Judge Taft, who wrote the opinion, in passing to the examination and construction of the will, said: "The decree of the probate court in 1872 settled no question involved in this case." In the decree of 1872 the court merely ordered the executor to deliver the residue of the estate to the widow, leaving untouched the question of her interest therein under the will. The distinction lies in that while the decree of the probate court is conclusive, it is only conclusive of those matters directly passed upon by the court. *Sparhawk* v. *Buel's Admr.,* 9 Vt. 41, 77. It is conclusive for the purpose for which it was made and no further. The question of Mrs. Stowell's interest in the fund was in abeyance to be determined in subsequent proceedings, as it was in the settlement of the final account of the executor, from which the appeal was taken. The probate court in passing the original decree had not construed the will; so, for obvious

reasons, that question was open on the appeal from the final decree.

It is unnecessary to multiply citations. Petitioner's counsel do not expressly question the conclusive effect of the decree. While much of their argument relates to the construction to be given to the will, they do not urge that the will can be construed independently of the decree, but in effect say that the decree refers to the will in such a way as to make it a part thereof.

Is such the effect of the concluding words of the decree, "agreeably to the provisions of said will?" We think not. It was the province, as well as the duty, of the probate court to determine and adjudge the kind of an estate which the widow took under the will. *Ward* v. *Church, supra; Keeler* v. *Keeler's Est.,* 39 Vt. 550. It must be presumed that the probate court discharged this duty, and that when it decreed a certain share of the testator's real estate to Hannah W. Hathaway her *heirs, executors and administrators* that was its judgment as to the kind of estate that the widow took under the will. The addition of the words "agreeably to the provisions of the will" imports no more than that the court determined and adjudged *that* to be the kind of an estate which she took by the provisions of the will.

A similar question arose in *Ward* v. *Church, supra,* which was a bill in chancery to have the will of one Wells construed. The probate court decreed to the oratrix, Lucia R. Ward, a daughter, a life estate in all the property of the testator, "pursuant to the last will and testament of the deceased and the laws of this State." No appeal was taken from this decree and later the proceedings in chancery were brought. It was contended that under the will and laws of this State the oratrix took the entire estate in fee, and the court of chancery was asked to construe the will and adjudge that she took such an estate. In holding that the court of chancery has no power to alter a regularly made decree of the probate court, this Court said: "It is not contended that the probate court is lacking in jurisdiction to determine and adjudge what kind of an estate the oratrix took in her father's estate under the will and under the laws of the state. * * * If by its decree, it has determined and adjudged her estate therein, that decree, unappealed from, is conclusive upon the oratrix' rights. The jurisdiction of the probate court in the settlement and distribution of the estates of deceased persons is

primary and complete, and its decrees thereon unappealed from, cannot be attacked not set aside in a collateral proceeding in chancery even." And while discussing the language of the decree as bearing upon the question whether the probate court had considered and adjudged the kind of estate taken; the court further said: "The terms of the decree, that it was made 'pursuant to the last will and testament of the deceased and the laws of this state,' apparently import that the court *did* determine and adjudge her rights to the property then being distributed, as given and fixed both by the will and by the laws of this State. The language used has that meaning."

This case is authority for the construction that we give to the language of the decree in the present case, for while it may not have been necessary to the disposition of that case to construe the language of the decree, it was a point fairly presented and properly considered; and so, if a *dictum,* it is a judicial dictum as distinguished from a mere *obiter dictum. Dorosia* v. *Ferland,* 83 Vt. 372; *Hall* v. *Hall's Est.,* 84 Vt. 259.

Petitioner's counsel further claim that in construing the decree the court should consider the report of the commissioners appointed to divide and set out the estate; but how is the decree, or the construction to be given to it, affected by the language of the commissioners' report? The power of the probate court to decree distribution is antecedent to, and wholly independent of, its power to appoint commissioners to make partition. Generally, questions of title, so far as they can arise in probate proceedings are disposed of, before commissioners are appointed, by a decree of distribution fixing the share of the heir or devisee. The office of the proceedings for partition is merely to segregate the shares so fixed from one another, and to transform them from undivided interests to interests in severalty, and by agreement of the parties interested partition may be dispensed with.

The jurisdiction of the probate court in matters of partition is limited to very narrow bounds and is governed strictly by the statute. *Grice* v. *Randall,* 23 Vt. 239; *In re Parson's Est.,* 64 Vt. 193. The power to appoint commissioners is dependent upon and presupposes a decree of distribution. P. S. 2957. Upon the coming in of the report of the commissioners the probate court may accept and establish the report. P. S. 2966. This decree of the probate court, if called such, amounts only to a confirmation of the acts of the commissioners done under

their warrant within the jurisdiction conferred upon them by law.

While the record does not disclose that the report of the commissioners was confirmed by the probate court, if we were to presume that fact in aid of the judgment below, it would not benefit the petitioner, for the power of the probate court to confirm the report relates only to those matters within the jurisdiction of the commissioners. It was not within the province of the commissioners to construe the will and determine the kind of an estate that the devisees took in the land they were setting out to them. *Gourly* v. *Woodbury et al.*, 43 Vt. 89; their jurisdiction was limited to dividing and setting off to the devisees their respective shares. P. S. 2957. Assuming that the report was confirmed by the probate court, it is evident that the decree of confirmation would not extend to a recital concerning a matter wholly outside the scope of the business properly before the commissioners; at least, by no recognized rule of construction could it be said that it operated to revoke by implication a formal decree of distribution made at a time when that question was properly before the court.

In *Chamberlain* v. *Chamberlain's Est.*, 16 Vt. 532, the propriety of the commissioners looking to the will to locate the land they were required to set out is recognized; but that is quite another thing from construing the will with reference to the kind of an estate acquired by the allotee, where the will specifies the location of the land the commissioners very properly look to it for their guide in determining its location, and, to that extent, they may be said to have authority to construe the will; but having no concern with the kind of an estate in the land they were called upon to divide, whether an estate in fee or for life, the commissioners to make partition on the estate of Mr. Hathaway acted without authority in passing upon that question and the *habendum* clause of their report had no force whatever.

By its decree the probate court determined that the estate of Hannah W. Hathaway in the share assigned and set out to her was an estate in fee. Petitioner's counsel do not contend otherwise, as well they may not, for the language of the *habendum* clause of the decree is the usual language employed to define such an estate. The petitioner's grantor then had the right to have the kind of an estate that the widow took determined and decreed correctly; and if the decree was deemed incorrect in

the respect now claimed, she could have appealed; and possibly could later have taken steps by petition, if seasonably brought, to have the decree corrected in the probate court. Not having done so, the decree must be held to have vested an estate in fee in Hannah W. Hathaway, regardless of its correctness, and to be conclusive upon petitioner's grantor and all claiming under her.

A decree of distribution is a muniment of title of the highest value and is not lightly to be set aside nor disturbed after rights have become vested thereunder. As this Court said in *Stone* v. *Peasley's Estate, supra,* "Good faith demands that title to property acquired by a judgment of a court of competent, and especially of exclusive jurisdiction, should not be liable to any failure or modification." Particularly should this be so after the lapse of half a century and when, as here, the decree is called in question in a collateral proceeding.

It follows that the court below erred in basing its judgment on its construction of the will. As the decree is conclusive, the petitioner having failed to show title through Hannah W. Hathaway has no standing in this proceeding and the petitionees should have had judgment below.

This disposition of the case makes it unnecessary to consider the other questions presented.

*Judgment reversed and petition dismissed.*