IN RE NICKERSON WARNER'S ESTATE
FLORA A. DESCHENE ET AL. *v.* LUTHER A. COBB.

May Term, 1924.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed January 8, 1925.

*Evidence—Parol Evidence of Appointment of Administrator Where Letters of Appointment Lost—Executors and Administrators—Sufficiency of Notice for Final Accounting and Distribution of Estate—No Notice Necessary of Continuance Made at Time Set for Such Hearing—Mere Willingness of Certain Legatees Seeking to Reopen Estate to Return What They Have Received From Estate Does Not Entitle Them to Relief—Presumption as to Probate Records—Facts Concerning Representative of Residuary Legatee of Estate Insufficient to Raise Presumption of Fraud—Failure of Court to Find Commingling of Funds of Two Estates—Insufficiency of Evidence to Show Commingling of Funds of Two Estates—Conclusiveness of Decree of Probate Court, on Final Settlement of Administrator, Distributing Residue of Estate, When Unappealed From—Exclusion of Evidence, on Petition to Reopen Estate, Tending to Show Decree of Distribution to Be without Supporting Evidence, Was Proper When Decree Was Unappealed From—When Share of Distributee of an Estate Becomes Vested—Administrator's*

*Liability As to Particular Item Conclusively Determined by
Decree—Admissibility of Certified Copy of Decree of Distri-
bution—County Court Is Appellate Probate Court, and Its
Judgments on Appeal, Not Reversed by Supreme Court on
Exceptions, Are Final and Binding on Probate Court—
Effect of Failure of County Court on Appeal From Probate
Court to Determine Material Questions of Fact Involved.*

1. Although the probate records did not show the appointment of a
    certain person as administrator, where such records did show
    that such person had filed a bond as administrator, and sub-
    sequently filed an inventory and account in the same capacity,
    which the probate court had received and allowed, parol evi-
    dence of his appointment as administrator and of the issu-
    ance of letters of administration to him, and that after he re-
    ceived them they had become lost, and that he had made
    diligent search therefor and could not find them, was com-
    petent.

2. Notice of order fixing date for final accounting of administrator
    and distribution of estate, by publication thereof in a specified
    weekly newspaper of the probate district having charge of the
    estate for three consecutive issues of such paper prior to date
    of hearing, was "public notice," and sufficient under G. L.
    3276.

3. Where at the time and place set for final accounting of adminis-
    trator and distribution of estate, after due and proper notice
    thereof, no one appeared, but the court thereupon of its own
    motion continued the hearing to a subsequent date, no notice
    of such continuance was necessary.

4. Where decree of distribution had been made after due hearing and
    no appeal had been taken therefrom, the fact that certain dis-
    tributees, seeking by petition to have the decree set aside and
    the estate reopened, were ready and willing to pay back what
    they had received, did not affect the case and entitle them to
    relief, in the absence of fraud being established to vitiate
    decree, and in the absence of similar finding of willingness of
    other legatees.

5. Probate courts being required to keep records of all their pro-
    ceedings, it will be presumed, the contrary not appearing, that
    after an administrator's account was filed it remained in the

office of the probate court as part of the records and files pertaining to the settlement of the estate in which it was filed.

6. Where a husband's will gave the use, control, and disposal of his estate to his wife for her support and maintenance during life, and from the residue, if any, at her decease, gave a small specific legacy in trust to a certain church, and provided for distribution of the residue among certain relatives, and under his wife's will such church received the *residuum*, the fact that a trustee of such church was appointed administrator *de bonis non* of the husband's estate and administrator with the will annexed of the wife's estate, the administrator having no personal interest in or antagonism to either, and there being no litigation in fact or in prospect between the estates, did not raise any presumption of fraud.

7. Failure of trial court to find that such administrator had commingled the funds of the two estates of which he was administrator *held* not error under the evidence.

8. Affirmative answer of such administrator to question as to whether whatever money came into his hands from either of such estates was commingled does not necessarily show a commingling of the money of the two estates, the answer being consistent with his having received no money from one estate and not having commingled the separate money of the two estates.

9. The fact that such administrator, while administrator *de bonis non* of the husband's estate, paid taxes, electric light bills, and insurance on the homestead property, standing in the name of that estate, does not show that he had money in his hands belonging thereto, where the uncontradicted evidence was that he made such payments out of the wife's estate under the supposition that she owned the homestead property.

10. Decree of probate court, determining amount of residue of estate and making distribution thereof on final settlement of administrator *de bonis non*, when unappealed from, *held* a final adjudication as to particular items claimed to be a part of the estate, binding upon all concerned.

11. In the absence of fraud, decree of probate court on final accounting of administrator *de bonis non*, making distribution of residue of estate, no appeal being taken therefrom, is conclusive upon the rights of all persons interested therein, hence whether probate court correctly construed will in reference

to the life support and maintenance of wife provided for therein, and whether such court reached the right result in determining the *residuum*, are thereafter immaterial.

12. On petition to set aside decree of distribution and reopen estate, the exclusion, on cross-examination of the judge of probate, of a question, which tended to show that the findings and recitals in such decree were without evidence, was without error, the decree, not having been appealed from, being conclusive.

13. When all residuary legatees of a will were paid by the administrator in accordance with the decree of distribution, from which no appeal was taken, the decree was thereby executed, and the distributive shares so paid became vested in the distributees, and beyond the control and jurisdiction of the probate court.

14. On petition to set aside decree of distribution and reopen estate, the contention that money received by testator's widow, executrix under the will and thereunder having the use, control, and disposal of her husband's estate for her support and maintenance during life, from the sale of land belonging to the estate, had been accounted for by the administrator *de bonis non* of such estate, appointed at her decease, at a less sum than she actually received for the land, was conclusively determined by such decree unappealed from.

15. On petition to set aside decree of distribution and reopen estate of deceased husband, certified copy of decree of distribution in the estate of his wife, who survived him, whether binding on petitioners or not, was admissible to show the fact of its being rendered, when it was rendered, and what entered into its determination.

16. County court, on appeal from decision of probate court refusing to grant petition to set aside decree of distribution and reopen an estate, is an appellate probate court, with powers coextensive with those of the probate court to hear and determine questions within the legitimate scope of petition, and its judgment rendered thereon, not reversed by the Supreme Court on exceptions, is final, and subsequent action of probate court must conform thereto.

17. On appeal from decision of probate court dismissing petition to set aside decree of distribution and reopen estate, the county court should determine all material questions of fact, including claimed negligence of administrator in failing to collect

17

rent for use of the estate, and, if found chargeable, to ascertain and determine amount thereof for which he should account as assets received by him as administrator for which he has rendered no account, such determination to be certified to the probate court for appropriate action, and where county court sets aside judgment of probate court because of administrator's failure in such respect, but makes no determination of the amount for which the administrator should account, its judgment order cannot stand.

APPEAL from order of probate court for the district of Essex, dismissing petition to set aside decree of distribution in the estate of Nickerson Warner, and to have the estate reopened. Heard by the court at the April Term, 1922, Essex County, *Moulton*, J., presiding. Allowance of administrator's account set aside and estate reopened for accounting as to a particular item. The petitioner excepted. The opinion states the case. *Reversed and remanded for further proceedings.*

C. R. Powell and Searles & Graves for the petitioner.

Harry B. Amey for the petitionee.

WATSON, C. J. This petition was originally brought to the probate court for the district of Essex, seeking to have the decree of distribution in the estate of Nickerson Warner set aside, and the estate reopened, because of certain alleged irregularities occurring in the administration thereof, and the claimed lack of notice of the decree. The probate court dismissed the petition, and an appeal was taken to the county court. As preferred the petition was by Flora A. Deschene, a niece and legatee under the will of Nickerson Warner, but, upon trial in the county court, leave was granted to Horace M. Warner and Martha Powers to enter as parties petitioner. The last two named are, respectively, brother and sister to Mrs. Deschene and also legatees. The facts stated below were found by the court.

Nickerson Warner died October 14, 1900, testate. His will, after providing for the payment of his debts and funeral charges, contained the following:

"I give and grant to my beloved wife, Sarah A. Warner, the use, control and disposal of all my estate, both real and per-

sonal and mixed to use and appropriate as she sees fit for her support and maintenance so long as she shall live." Provision was also made therein for the creation of a trust fund of $500, out of what might remain at the death of the wife, for the benefit of the First Congregational Church of Brighton, conditioned upon the church caring for and maintaining a certain burial lot. The balance of the estate remaining at the decease of Sarah A. Warner was, by a codicil subsequently executed, divided equally among the six nephews and nieces of the testator.

The will of Nickerson Warner (more commonly hereinafter referred to as Mr. Warner) stated that his estate consisted of one undivided half of all the property, rights and rights of action, in their or either of their hands, names and possession or which might be at the time of his decease. The will of Sarah A. Warner (more commonly hereinafter referred to as Mrs. Warner) executed at the same time, contained a like statement regarding her estate.

The will of Mr. Warner named his said wife as executrix; and upon his death she qualified as such executrix and entered into possession of the estate. She filed an account on May 14, 1901, charging herself with real estate appraised at $2,800, and personal property appraised at $2,575. She credited herself with sundry disbursements amounting to $289.75, and stated a balance in her hands consisting of the real estate and the residue of the personal estate amounting to $3,265.25. Upon this account was indorsed the following: "We, the undersigned, being the heir of Nickerson Warner, late of Brighton deceased, hereby assent to the within account of Sarah A. Warner executrix of said estate. Sarah A. Warner." And also the following: "Order of notice complied with. Account returned and approved 14th day of May, 1901, and recorded in Vol. 21, page 9. Robert Chase, Judge."

Nothing further appears of record during the lifetime of Mrs. Warner. She died December 3, 1916, testate, and Luther A. Cobb was appointed administrator with the will annexed of her estate, on January 11, 1917.

Four days later, January 15, Cobb was appointed administrator *de bonis non* with the will annexed of Mr. Warner's estate. This latter trust he resigned early in 1919, without having filed an inventory or account, or, so far as appeared, having taken any steps in the administration of the estate. Upon his resigna-

tion, and on February 26, 1919, E. M. Bartlett was appointed administrator *de bonis non* with the will annexed. Mr. Bartlett died September 26, 1919, having filed no inventory or account as such administrator, although he sold certain real estate belonging to that estate under license of the probate court.

[1]    After the death of E. M. Bartlett, his son, P. A. Bartlett, assumed to act as administrator *de bonis non* with the will annexed of Mr. Warner's estate, but some question was made below and is here as to his appointment, it being claimed by the petitioners that there was no competent evidence showing such appointment. But the exception in this respect is not well taken. As will be seen, it was a case where secondary evidence was competent for that purpose.

It appeared that the probate records did not show such appointment of P. A. Bartlett, and no letters of administration to him were produced; but the records did show that he filed a bond as such administrator on November 3, 1919. Parol evidence was introduced without exception being saved, showing such appointment and the issuing of letters of administration to him, and that after he received them they became lost, and that he had made diligent search therefor but was unable to find them. It further appeared that he filed an inventory and account as administrator of that estate, which account was received and allowed by the probate court. The character in which he filed the inventory was questioned—at the beginning of the document he is described as administrator *de bonis non* of the estate of Nickerson Warner, while at the end he is termed the administrator of E. M. Bartlett's estate. But it is found that this was intended to be the inventory of the Warner estate and was so accepted and recorded by the probate court. In *Lowry* v. *Cady*, 4 Vt. 504, 24 A. D. 628, objection was made to the admission of secondary evidence of the judgment and execution in question. It was held that "as the judgment was not recorded, the court were justified in receiving other evidence of the same than an exemplified copy of the record." Referring to that case as authority, a similar holding was had in *Randall* v. *Preston*, 52 Vt. 198, where the report of commissioners on an estate had not been recorded. In *Read* v. *Staton*, 3 Hayw. (Tenn.) 159, 9 A. D. 740, parol evidence was held properly received to prove the former existence of a judgment, and the loss thereof by the justice who gave it. In *Tillotson* v. *Warner*, 3 Gray (Mass.)

574, an action for malicious prosecution, the plaintiff, for the purpose of proving the proceedings before the justice of the peace, called the justice, who testified that a complaint was made before him against the plaintiff, and a warrant issued thereon by him; that he made no record of the proceedings before him, except some minutes on the back of the original complaint and warrant; that he could not find the original complaint and warrant, although he had made a thorough search for them. The court said the evidence of the magistrate proved that there was an original complaint and warrant which had been lost, and that the minutes of the proceedings thereon were made by him on the back of the papers in conformity with his usual practice; and that this was satisfactory proof that a record once existed, and it being shown to have been lost, secondary evidence of its contents was clearly admissible.

[2, 3]   The date for examining and allowing P. A. Bartlett's final account of administration, and for decreeing the residue of the estate to the lawful claimants of the same, was set by the probate court for December 19, 1919, at the probate office in Brighton, and an order was made to this effect on November 28, 1919.  The order provided also that notice should be given by publication for three weeks successively in the *Essex County Herald*.  In accordance with this order the notice was published in the issues for December 4, 11, and 18, respectively.  This was "public notice" to all persons interested of the time and place of examining and allowing said account and making decree of distribution, and was sufficient under the provisions of G. L. 3276. *Lenehan* v. *Spaulding*, 57 Vt. 115.  "The proceeding was according to law in all respects, and being in the nature of a proceeding *in rem*, it binds everybody by its legal effect." *Burbeck* v. *Little*, 50 Vt. 713.  At the time and place set for the hearing none of the petitioners or other legatees under the will of Nickerson Warner appeared.  Thereupon the judge of probate then and there continued the hearing until April 6, 1920, at which time the final account of P. A. Bartlett as administrator *de bonis non* with will annexed was filed and, no one appearing to object, the same was allowed, and the decree of distribution was entered.  It is urged that no notice was given of the time fixed by the continuance.  But no notice thereof was necessary in law, other than that of the continuance itself when ordered.

[4]   The material parts of the decree were as follows:

"Whereas, it appears by the records and files of said court, that Sarah A. Warner, the executrix and one of the beneficiaries under the will of said Nickerson Warner has deceased and that said Sarah A. Warner during her lifetime appropriated for her support and maintenance out of said estate the sum of three thousand nine hundred sixty-five dollars and twenty-five cents ($3,965.25) according to the terms and provisions of said will. And it further appears that after the payment of the debts and funeral charges of said deceased the expenses of administration of his estate and the aforesaid sum appropriated as aforesaid there remains in the hands of said P. A. Bartlett, administrator *de bonis* the sum of two thousand one hundred and sixty-two dollars and eleven cents ($2,162.11) for distribution." Then followed a list of the beneficiaries named in the will and codicil and a distribution of the latter sum among them. No appeal was taken from this decree. The administrator paid to each of the beneficiaries (with the exception of the Congregational Church to which an advance had already been made) the sum of money decreed to them and received from each a receipt in full of their respective shares in the estate. Mrs. Deschene and Horace M. Warner each testified, and the fact is found to be, that they were willing and ready to pay back the sum so received by them if the petition is granted. Concerning this finding nothing need be said except that it does not affect the case in the absence of such fraud being established as vitiates the decree, and in the absence also of a similar finding as to all legatees who received their distributive shares under it.

It is found that Mrs. Deschene had actual knowledge of the date set for the hearing at Brighton on December 19, 1919, but decided not to attend. The reason for her decision in this respect is immaterial. The significance of the finding rests in the fact that she knew of the time and place specified in the notice for the hearing.

[5] In this connection is the further finding that meanwhile the estate of Mrs. Warner was in process of settlement; that Cobb, administrator with the will annexed of that estate, "presented his final account, and after publication of notice in accordance with an order of the probate court, and no one appearing to object, it was allowed, and a decree of distribution made which recited that the residue of the estate, after payment of debts and expenses, amounted to $5,728.61, and this sum was

decreed to the First Congregational Church of Brighton in accordance with the will. No appeal was taken." And since the probate courts of this State are required to keep records of all their proceedings (*Holden* v. *Scanlin*, 30 Vt. 177), it is to be presumed, the contrary not appearing, that after said account was filed it remained in the office of the probate court, as part of the records and files pertaining to the settlement of that estate. It would seem that herein may be found the basis, if any were needed in these proceedings, for the statement of the probate court in its decree of distribution in the Nickerson Warner estate, that "It appears by the records and files of said court, that Sarah A. Warner * * * during her lifetime appropriated for her support and maintenance out of said estate the sum of three thousand nine hundred sixty-five dollars and twenty-five cents ($3,965.25) according to the terms and provisions of said will."

On April 6, 1920, at the time of the allowance of the administrator's account and entry of decree of distribution in Mr. Warner's estate, Cobb, representing Mrs. Warner's estate, filed his account as administrator of her husband's estate. In it he charged her with various items of real estate amounting in value to $2,800.00, and personal property amounting to $3,265.25. He credited her with the homestead in Island Pond, $2,500.00, one hundred acres at the head of the Pond, $500.00, and the Elliot place, $100.00. These last two pieces of property constitute the real estate mentioned in a previous paragraph as sold by E. M. Bartlett, administrator *de bonis non* during his term of office, under license from the probate court. Cobb further charged her with $3,965.25 "used and appropriated for support and maintenance during her lifetime." As to this item, he testified, and the fact is found to be, that there were no accounts from which the sum so used could be computed, but that he arrived at the amount upon consultation with the judge of probate by deducting the value of the three pieces of real estate left in her hands at the time of her death, from the total of the appraised value of the estate received by her from her husband's estate.

At the same time P. A. Bartlett, as administrator of E. M. Bartlett's estate, filed the latter's account as administrator *de bonis non*, stating the receipt of $2,564.75 proceeds of the real estate referred to above, and the payment thereof to P. A. Bartlett, administrator *de bonis non*. The latter also filed an inventory listing the real estate at the inventory value of $2,100.

It appears that during her lifetime, Mrs. Warner was quite active in business. A large number of deeds was introduced in evidence not here mentioned in detail. Her bank book, which had stood in her own name before the decease of her husband, showed a large number of withdrawals and deposits, but the balance increased from $508.75 on October 31, 1900 (the nearest balance in point of time to her husband's death) to $2,620.48 on November 1, 1916 (the nearest balance in point of time to her own death). The real estate other than the three pieces left at her death was disposed of by her during her lifetime, without the formality of an application for and grant of a license to sell by the probate court. "In fact," says the trial court, "it is evident that" she "acted upon the assumption that she had the right to dispose of the property which came into her possession at her husband's decease." And from the facts shown by the record it seems pretty certain that such a construction was given to the will by the probate court at the time the administrator's final account was settled and the decree of distribution rendered, and that the widow's authority under the power of disposal was from the testator who created the power, not from the probate court.

It is found that in her will Mrs. Warner devised the Brighton homestead to a Mrs. Steele, who had taken care of her for many years; that this appears to have been done pursuant to an agreement or understanding of some sort (although its exact nature did not appear) because Mrs. Steele had expended at least $1,000 in improvements to the house; that upon Mrs. Warner's death, it became understood that this homestead did not form part of her estate, and Mrs. Steele being disappointed in her devise, and being about to make claim for the value of her services and the improvements paid for by her, Cobb paid to Mr. Warner's estate the appraised value of the homestead, $1,500.00, and E. M. Bartlett, then the administrator of the latter estate, deeded it to her, having first obtained a license to sell from the probate court; that these acts of Cobb and administrator Bartlett were with the knowledge of the First Congregational Church of Brighton, the residuary legatee under Mrs. Warner's will.

The record states that "in all these transactions no fraud or collusion is found to exist upon the part of Luther A. Cobb, E. M. Bartlett, P. A. Bartlett, or the judge of probate or any of

them." To this finding an exception was taken upon the grounds
(1) that it was entirely without supporting evidence, (2) that it
was contrary to the evidence, and (3) that the transaction of
Cobb representing at one time both the Sarah A. Warner estate
and the Nickerson Warner estate, was presumptively fraudulent
as a matter of law. But no one of these grounds is well founded.
A careful examination of all the evidence, direct and circum-
stantial in the case, convinces us that the finding in question
was far from being without evidence, and we cannot say it was
contrary to the evidence. The question of fraud was above all
the important issue before the trial court, and upon the estab-
lishment of it depended for the most part the result of the case.
Much evidence was introduced bearing thereon, and it was for
the court to weigh and consider in the light of the claims made
by the respective parties. It cannot justly be said that the
finding was unwarranted as to any of the persons named.

[6]   The third ground raises a question of law. So far as
appears, when Cobb was appointed administrator of the two
estates and ever thereafter he had no personal interest in or
antagonism to either. There was no litigation in fact or in
prospect between the estates. At the time of Mrs. Warner's
death, he was and for several years had been a trustee of the
First Congregational Church of Brighton, and a member of its
finance committee which had the management of its funds. The
church was given a small specific legacy (in trust) by the will of
Mr. Warner, and the *residuum* by the will of Mrs. Warner. Yet
there is nothing connected with the material circumstances
enumerated, by reason of which the transaction of Cobb in repre-
senting at one time, as administrator, both estates, was in law
presumably fraudulent.

[7, 8]   It is said that the court erred in failing to find (a)
that Cobb, while acting as administrator *de bonis non* of Mr.
Warner's estate, received certain moneys belonging to that
estate, and (b) commingled them with the money of Mrs.
Warner's estate; and that the commingling of the funds of the
two estates was at least a technical embezzlement and not only
constituted the strongest evidence of fraud, but eventually re-
sulted in a serious loss to and impairment of Mr. Warner's
estate, for the fund or commingled property was treated by Cobb
and the probate court as all belonging to Mrs. Warner's estate
on final settlement. It is urged in argument that Cobb admitted

when testifying that he received money of the Warner estates and commingled the same, that this was direct and positive evidence of the facts as the petitioners claimed them to be and were in no way contradicted by any other evidence in the case. But it is doubtful if Cobb's testimony is fairly subject to the construction here urged. He testified that money came into his "possession belonging to the Warner estates"; that "it is impossible to say whose the money was in" his hands; that money came into his hands "from the Warner estate." He was then asked: Q. "In other words, Mr. Cobb, whatever money came into your hands, either from the Nickerson Warner estate or the Sarah Warner estate was commingled by you?" A. "Yes, sir." It will be noticed that this question was not whether separate money came into his hands from each of the estates, and was commingled by him, but (in the alternative) whether whatever money came into his hands from either estate was commingled by him, and this was the question he answered in the affirmative. This answer was responsive even though he received money from Mrs. Warner's estate and commingled it with other money of the same estate, but received no money from Mr. Warner's estate, and therefore did not commingle the separate moneys of the two estates. That Cobb's testimony in this behalf cannot fairly be given any other meaning appears from the following questions and answers, asked and answered in the same connection (after two other questions were asked and answered relating solely to his knowledge of real estate in the name of Nickerson Warner), "Q. Have you with you all papers showing moneys received and moneys paid out of either the Nickerson Warner or the Sarah Warner estate by you? A. I have the account. Q. Did you understand my question? A. Yes, sir. Q. And your understanding is that you have? A. Yes. Q. Now you say that certain moneys were turned over to you as the administrator *de bonis non* of the Nickerson Warner estate, do you not? A. No, sir, no moneys." Later, during the same examination by the petitioners' attorney, Cobb was asked: "Q. Now you have stated that you could not tell which was property of Sarah Warner and which was property of Nickerson Warner when you took possession of the property in the Nickerson Warner and Sarah Warner estates, that is true isn't it? Yes, I thought all the moneys belonged to Sarah Warner. Q. What makes you think that? A. The accounts

were in her name, notes were payable to her, and I saw no reason why they didn't belong to her.   Q.   That is all you know about it?   A.   Yes.''

[9]   Nor does the fact (in evidence) that Cobb, within the time he was administrator *de bonis non* of Mr. Warner's estate, paid taxes, electric light bills, and insurance on the homestead property standing in the name of that estate, show that he had any money in his hands belonging thereto; for the uncontradicted evidence was that he made those payments out of Mrs. Warner's estate, it being then supposed that she owned the homestead property.   None of the money so paid out of her estate was reimbursed by Mr. Warner's estate until after the property had been deeded to Mrs. Steele by E. M. Bartlett, administrator, as before stated.   Then the latter administrator thought that he should pay the taxes, insurance, etc., for the last year, and an adjustment was made by his giving to Cobb a check for $61.72, and the same was credited on the account of Mrs. Warner's estate at the bank.   The foregoing exceptions for failure to find, are not sustained.

[10, 11]   Some question is made by the petitioners as to certain items which are claimed to constitute a part of the Nickerson Warner estate, but have not been included in the administrator's account.   These items are as follows:   (1) Certain real estate, standing in the name of Nickerson Warner, in the towns of Newark and Burke appraised at $700.   This real estate was sold by Mrs. Warner as already mentioned, and the deeds given by her state the consideration to be $805.   It is claimed that the administrator of Mr. Warner's estate should account for this excess of $105.   (2) During the time that Cobb was administrator of the latter estate from January 15, 1917, to February 26, 1919, no rent was collected or received by him from the homestead in Island Pond, occupied as above stated by Mary Steele. The fair rental value of this property during this time was $25 a month.   Petitioners claim that the rental for this period amounting to $600, should be accounted for.   (3) Petitioners claim that the administrator of Mr. Warner's estate should also account for the sum of $3,965.25, which was stated by the probate court in the decree of distribution to have been ''appropriated for her support and maintenance out of said estate'' by Sarah Warner.   The facts as to this item have already been stated.

By Nickerson Warner's will with the codicil annexed, one-

sixth of the residue and remainder of his estate after the death of his wife, and not otherwise disposed of, was devised and bequeathed to each of his six nephews and nieces named. It therefore became necessary for the probate court, at the time of, and in connection with, the final settlement of the account of P. A. Bartlett as administrator *de bonis non* of that estate, and in making the decree of distribution according to the provisions of the will, to determine the amount of the residue and remainder to be distributed. Such determination necessarily involved the construction of the will with reference to the widow's rights and powers under it, and the ascertainment of the amount of that estate used and appropriated by her during her lifetime for her support and maintenance; for whatever the aggregate sum might be, it must, under the will, in the accounting by the administrator, be deducted from the estate in his hands in finding the *residuum* for distribution. The decree states that it appeared from the records and files of the court that the widow during her lifetime appropriated out of said estate for her support and maintenance the sum of $3,965.25 "according to the terms and provisions of said will." The foregoing matters were directly in issue and passed upon by the court within its jurisdiction; their adjudications were *in rem,* and (unappealed from) the decree is binding upon all concerned. *Sparhawk* v. *Buell,* 9 Vt. 41; *Woodruff* v. *Taylor,* 20 Vt. 65; *Lawrence* v. *Englesby,* 24 Vt. 42; *In re Welch's Will,* 69 Vt. 127, 37 Atl. 250. Whether the probate court correctly construed the will in the respects named, and whether the court reached the right result in determining the amount of the *residuum,* are questions now immaterial; for, no appeal being taken, the decree, in the absence of fraud, is conclusive upon the rights of all persons interested therein. *Ward* v. *Church,* 66 Vt. 490, 29 Atl. 770; *Sparrow* v. *Watson,* 87 Vt. 366, 89 Atl. 468.

[12]    Exception was taken to the exclusion of the question in cross-examination of the judge of probate, whether it was true that when he appropriated or directed Cobb to appropriate $3,965.25 of the Nickerson Warner estate for the benefit of the Sarah A. Warner estate on the ground that she had used it for her support and maintenance, he did it without any evidence of the fact. This was an attempt to show that the findings and recitals in the decree of distribution on the former estate were without evidence. What we have said above as to the conclusive-

ness of that decree is decisive that there was no error in the ruling.

[13]    When all the residuary legacies were paid by the administrator in accordance with the decree of distribution, as before observed, that decree was executed, and the distributive shares so paid became vested in the distributees, and beyond the control and jurisdiction of the probate court. In *Stone* v. *Peasley's Estate,* 28 Vt. 716, this Court, in an opinion by Chief Judge Redfield, said: "A decree of distribution of an estate, when once executed, vests the property, and puts it out of the control and appropriate jurisdiction of the probate court. Property once fully administered upon is as effectually out of the jurisdiction of the probate court as it ever can be. After property is once vested, in obedience to a judicial sale or decree, it would certainly involve a very strange anomaly, if the title could be modified or defeated by any after proceedings of the same tribunal."

Also the case of *Leavins* v. *Ewins,* 67 Vt. 256, 31 Atl. 297, is much in point. That was a petition to the probate court, praying for the correction of its decree, made some years before, distributing a certain estate. Being in the county court on appeal, the petition was dismissed, and on exception thereto the case came to this Court. By the decree there in question, the executor of the estate was ordered to pay to the legatees named, in equal parts, the residue of the personal estate. From that decree no appeal was taken. By the prayer of the petition the probate court was asked to correct the decree by striking out the words "in equal proportions." This Court said the probate court undertook to decree the estate according to the legal effect of the will, and its decree, unappealed from, was binding on all parties; that the construction thereby given to the will was a legal construction, and became the law of the case, governing the distribution of the estate; that the construction thus given to the will was a judicial construction under which property rights vested, and for error in that construction they could not then be disturbed. To the same effect is *Grice* v. *Randall,* 23 Vt. 239; *Sparrow* v. *Watson, supra.*

[14]    The same principle is determinative against the claim of petitioners growing out of the facts (appearing of record) "that during her lifetime Sarah Warner sold two certain parcels of land which were a part of the estate of her husband. The consideration stated in the deeds was $805. The appraised value,

which was charged to her in determining the sum 'used and appropriated' by her, was $700. The petitioners claim that the difference of $105, which was not included in this sum, was a part of the estate of Nickerson Warner, and should be accounted for by his administrator.'' Thus the record shows that the money received by the executrix as consideration for the two parcels of land named was a subject directly and specifically acted upon by the probate court in finding the *residuum*. The contention here is, not that this money did not enter into that determination, but that it went into the accounting at a less sum than the executrix actually received for the land. In the case of *Probate Court* v. *Merriam*, 8 Vt. 234, a similar claim was, made, it being said that the executor in fact fraudulently sold certain land to himself at a sum less than its value, and less than he had been offered. This Court said the probate court having had the subject before it and passed upon it, and no appeal having been taken, it was too late to bring forth evidence thereof in the trial of an action based on a probate bond. Another holding of conclusiveness was had in *Rix* v. *Smith*, 8 Vt. 365, as to the settlement of an administrator's account, wherein he was allowed a credit item of $309.47 as having been paid out by him on a certain claim against the estate, when in fact he paid on the claim only $138.16; also another item of $83.16, which he settled by paying only eighty-four cents. No appeal having been taken, the decree of the probate court in these respects was held conclusive, the court saying that the payments were allowed to the administrator in both instances, and the effect of the evidence offered was merely to show that the decree was wrong, and that the credit given to the administrator should have been for a less sum.

[15] Exception was saved to the reception in evidence of a certified copy of the decree of distribution in the Sarah A. Warner estate, on the ground that that decree was not binding on the petitioners. Whether it was binding on them or not, the copy was admissible as evidence of the fact of its being rendered and when, and of what entered into its determination.

[16, 17] The following material questions of fact concerning the so-called transactions with Mrs. Steele were determined as claimed by the petitioners, that is, the trial court found that during the time Cobb was administrator *de bonis non* of Mr. Warner's estate, he collected no rent for the use of the home-

stead property occupied by her; that he did not in any way account for such rent, and no explanation for his failure to charge and collect rent appeared in the proceedings; that the fair rental value of this property during the period of his administratorship (from January 15, 1917, to February 26, 1919) was twenty-five dollars a month. These findings being substantially as asserted by the petitioners, their exceptions touching them are not considered. They except to the judgment, however, for that, among other things, Cobb omitted to account for or collect any rent for the use of that property, his failure in this respect (they assert) being a fraudulent neglect of duty and breach of trust. In acting upon the matters of this petition the county court was an appellate probate court with powers coᴀ ·sive with those of the probate court to hear and determine the questions presented within the legitimate scope of the petition, and its judgment rendered thereon, not reversed by the Supreme Court on exceptions, is final, and the subsequent action of the probate court must conform thereto. *Buffum* v. *Haynes' Estate,* 68 Vt. 534, 35 Atl. 474. The trial court states: "The (Steele) transaction was, in effect, a settlement of a claim against Mrs. Warner's estate, and not against the estate of her husband. Without holding that the administrator was negligent in this respect, because his course may be open to explanation, in the exercise of our discretion we think that the estate ought to be opened for the purpose of an accounting by Mr. Cobb upon the question of the rental value of the Brighton homestead from January 15, 1917, to February 26, 1919." And the judgment was, "The allowance of the account of the administrator is set aside and the estate of Nickerson Warner reopened for the purpose of" such accounting. "To be certified to the probate court." Thus it appears that the county court did not itself find as a fact or hold that the failure of Cobb to collect rent for the use of the property named during the time of his administration was due to any neglect of duty on his part as administrator, a fact to be established before he can be made chargeable for such rent in these proceedings, it being unquestioned that he never in any way received anything for such use. It would seem that the trial court either deemed such negligence not essential to Cobb's liability to account for uncollected rent, or left the question of negligence to be determined by the probate court in connection with and as a part of the accounting. Let it be

either way, the judgment order cannot stand. It was the duty of that court, in the proper course of procedure, to determine all material questions of fact, including that of negligence, connected with, or claimed to be connected with, the failure of Cobb, in his representative capacity, to collect rent for the use of the property named, and if the facts found be such as to render him chargeable, to ascertain and determine the amount for which he should account in that respect, as for assets received by him as administrator and in his possession belonging to the estate, for which he has rendered no account. And it is the sum so ascertained, and determined, if any there be, which is to be certified to the probate court to be there disposed of as the will and the law require. *Davis* v. *Eastman,* 68 Vt. 225, 35 Atl. 73. In the circumstances of this case, even if Cobb be held chargeable for rent which he should have collected as administrator, there was no occasion for setting aside the allowance of any previously filed account by him, indeed it appears that he never had filed an account, that nothing came into his possession when holding that position except real estate which he passed over in kind to his successor, E. M. Bartlett. At most it is but a further settlement by Cobb for assets belonging to the estate which he in the proper performance of his trust ought to have received and accounted for. *Davis* v. *Eastman,* 66 Vt. 651, 30 Atl. 1. No questions are before us on exceptions by defendant Cobb.

On the record and under our holdings in review, the only question remaining open for further consideration is as to defendant Cobb's liability for rent for the use of the homestead property during the period named, which he did not collect and for which he rendered no account. *As to this question the judgment is reversed and cause remanded to the county court to be there proceeded with in the manner above indicated and not otherwise. The costs on this question to be determined later when the question is finally adjudged. In all other respects the judgment, in effect for defendants, is affirmed with costs to defendant Cobb. Defendant Bartlett to recover his full costs. To be certified to the probate court when the case is fully ended.*