JOHN STONE, *apt. v. The Estate of* DANIEL PEASLEY.

*Notice of proceedings in the probate court. Distribution of estates; qualification of decrees respecting, after they have been carried into effect.*

Notice must be given to all persons interested in the distribution of an estate, or in an apportionment of an undivided fund, in the hands of a guardian, belonging to two or more of his wards, of any proceedings before the probate court making such a distribution or apportionment; or altering or modifying one previously made.

The proceedings of the probate court in the present case, in revising their previous determination as to the proportion of an undivided fund in the hands of a guardian, which one of the two wards of such guardian was entitled to, *held* invalid

on account of there having been no notice of the proceeding given to the repre-
sentatives of the other ward who had previously deceased.

*Quære.* Whether a decree of the probate court for the distribution of an estate can
be altered or modified after it has been carried into effect.

A probate court distributed an estate exclusively to the heirs of the full blood,
taking no notice of the half blood heirs, who were, in law, equally entitled to
their proportion. *Held*, that the title to the estate was beyond the control of the
probate court, after the full blood heirs had taken possession, in pursuance of the
decree. —————— v. ——————, Orleans county, cited by REDFIELD, CH. J.

Distinction between such cases and those in which the probate court have reviewed
and revised the settlement and allowance of an administrator's acount;—and the
grounds of the proceeding in the latter class of cases considered.

APPEAL from the disallowance of a claim made by the appellant
against the estate of the intestate. The cause was referred, and,
from the report of the referee, the following facts appeared.

By the will of Daniel Peasley, sen., the father of the intestate,
which was probated January 18, 1828, three-fourths of his prop-
erty, after providing for his widow, was given to his son, the intes-
tate; and the other fourth was to be equally divided between his
daughters, Lucy Ann Peasley and Laura Ann Peasley. The ap-
pellant was appointed guardian for the intestate, and also of the
said Lucy Ann and Laura Ann, all of them being minors, and re-
ceived the property to which they were entitled from their father's
estate. At the expiration of his guardianship for Lucy Ann, the
eldest of the three children, he settled his account and paid over,
as her share, one-eighth of the property which came into his hands;
and on the 29th of November, 1843, the said Laura Ann having
become of age, he settled in the probate court his account as guar-
dian, both of the said Laura Ann and of the intestate, and by a
decree of that court he was directed to pay, and did pay over to
the said Laura Ann one-eighth of the fund in his hands then be-
longing to the two wards, Laura Ann and the intestate. Subse-
quently one B. W. Bartholemew was appointed guardian for the
intestate, and the appellant paid over to him the remaining seven-
eighths of the fund, which was paid over by the said Bartholemew
to the intestate, upon his becoming of age. The intestate died in
March, 1854, and administration was duly granted upon his estate,
and commissioners appointed. In September, 1854, an application
was made to the probate court by the said Laura Ann, setting forth,

and, upon an examination and hearing by said court, it was found and adjudged that, upon the settlement made in November, 1843, the said Laura was, in fact, entitled to one-seventh instead of one-eighth of the fund then in the appellant's hands, as guardian for the said Laura Ann and the intestate, and that the decree ought to be reformed in that respect; and the probate court thereupon so ordered and further decreed that the appellant pay to the said Laura the difference between said eighth and said seventh part, amounting to $146.81. The appellant was duly notified of this application, but no notice of it whatever was given to the administrator of the intestate. The appellant claimed an allowance against the estate of the intestate for the amount of the decree of the probate court in favor of the said Laura Ann against him. The referee found that, in fact, the said Laura Ann was, upon the settlement in 1843, entitled to one-seventh instead of one-eighth part of the guardianship fund then in the appellant's hands, but submitted to the court whether, upon the facts as above stated, the appellant was entitled to an allowance of his claim against the intestate's estate.

The county court rendered judgment, upon the report, in favor of the appellant, to which the appllees excepted.

*Peck & Colby* and *Dickey* for the appellees.

The decree of the probate court, on which the plaintiff founds his claim to recover, is a nullity. It was made without notice to the representatives of the intestate, who are not to be affected by a proceeding of which they had no notice. Comp. Stat. p. 368, § 8; 1 D. Chip. 357; *Chase* v. *Hathaway*, 14 Mass. 221; *Hathaway* v. *Clark*, 5 Pick. 490; *Burd* v. *Pratt*, 18 do. 115; *Conkey* v. *Kingman*, 24 do. 115.

If the orders of the probate court, and settlement made prior to the last order, can be, at this late day, varied by proceedings in that court, it can only be legally done on notice *to all interested.* Can it be done at all? *Field* v. *Hitchcock*, 14 Pick. 405.

*C. W. Clarke* and *W. Hebard* for the appellant.

The probate court have power to correct errors in their decrees after lapse of time short of twenty years. *Heirs of Smith* v. *Rix Admr.* 9 Vt. 240; *Adams et al.* v. *Adams et al.*, 21 Vt. 162.

It is not matter of error that the probate court did not notify the other party of the application to have the error corrected. The statute does not require notice in such cases ; and when it is in the *discretion* of the court to give notice or not, their proceedings are valid.

The opinion of the court was delivered, at the circuit session in October, by

REDFIELD, CH. J.   There are numerous questions involved in this case, more or less preliminary to the main question, which, being decided in favor of the appellees, would lead to a new trial, without determining the main question, and as they have all been fully argued, it seems important, as far as consistent, to determine them now.

I. A question is made in regard to the extent of the operation of this remodelling of the decree of 1843, whether it is binding upon the esate of Daniel Peasley, there being no general notice given, and no special notice to any one but the appellant.   The statute seems to require special notice to all the parties interested in the distribution of estates ; and reason would certainly indicate the necessity of such notice.   Indeed all judicial proceedings, without constructive notice, at the least, are altogether inoperative.   There being, then, no notice to the appellees of the application for remodeling of the decree of 1843, we think they may stand upon the original decree, or, at all events, they are not concluded by the new decree of 1854.

II. It seems to us a question of some difficulty whether such a decree as that of 1843, is susceptible of modification by the probate court, after being carried into effect.   A decree of distribution of an estate, when once executed, vests the property, and puts it out of the control and appropriate jurisdiction of the probate court.

Property once fully administered upon is as effectually out of the jurisdiction of the probate court as it ever can be.   After property is once vested, in obedience to a judicial sale or decree, it would certainly involve a very strange anomaly, if the title could be modified or defeated by any after proceedings of the same tribunal, and especially *ex parte* proceedings.   A sale by a sheriff, after it is once ended, is certainly beyond his control.   If he sell one-seventh

of an estate or personal chattel, it is certainly not in his power subsequently to compel the purchaser to accept of an eighth part, upon any new discovery in regard to the title, or his authority. So too of a sale by a master in chancery, or a receiver, or any other public officer. Good faith demands that title to property, acquired by judgment of a court of competent, and especially of exclusive jurisdiction, should not be liable to any failure or modification.

Hence this court held, in a case in Orleans county, many years since; after two arguments, that a decree of distribution of real estate exclusively to the heirs of the full blood, taking no notice of the half-blood heirs in the same degree, who were at law equally entitled to share in the estate, could not, after possession had been taken of the estate by those to whom it had been decreed, upon petition of the heirs excluded from their share in the estate, be so modified as to give the property to those originally entitled to it. And a decree of the probate court making a new distribution of the estate, as it originally should have been made, affirmed in the county court, was set aside in this court, upon the ground that the first decree, and possession taken under it, put the title beyond the control of the probate court.

III. The cases of *Smith's heirs* v. *Rix, Admr*, 8 Vt. and S. C. 9 Vt., and *Adams* v. *Adams*, 21 Vt., where decrees of the probate court were modified by that court and affirmed in this court, stand upon somewhat peculiar grounds which do not apply in this case.

1. These cases are all decrees upon the settlement of administrator's accounts, where the proceeding is, in effect, *ex parte*, the administrator partially representing both sides, although, in contemplation of law, the heirs or creditors may appear. See case of *Adams* v. *Adams*, 22 Vt. Hence such decrees are not of the same conclusiveness as decrees of distribution, or indeed as ordinary judgments and decrees, where both parties in interest are represented.

2. These cases are, so far as they hold decrees of the probate court liable to revision, confined to questions not passed upon in a former decree, as cases of fraud, &c., such as will justify a court of equity in setting aside a contract, or modifying or even vaca-

ting a decree of the same court. *Harris* v. *Hardiman,* 14 How-
ard 334. We mean, doing this, in effect, by enjoining the party.

3. They are based upon very questionable grounds of policy,·
and ought not to be extended beyond similar cases in all respects.

We think, therefore, this judgment must be reversed, and upon
the report of the referee, judgment entered for the appellees.