[1]IN RE ESTATE OF CHARLES N. HAYWARD, ROSE LUCIA, ADMX. OF J. H. LUCIA, TRUSTEE, APPELLANT.

May Term, 1919.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 7, 1919.

*Wills—Life Estate With Limited Power of Disposal—Trusts— Accounting.*

[1] NOTE:—When this case was originally argued it was assigned to Mr. Justice Haselton. Upon his retirement from the bench, the case, being ordered for reargument, was assigned to Mr. Justice Taylor.

Where a will gave the residue of testator's property to his daughter during her natural life, and, if she died without children, the same to be divided between certain benevolent societies, and it provided that she might use whatever of the estate that might be necessary for her support and comfort, the daughter took a life estate and not a fee.

In an accounting by the trustee of the residue of said testator's property, *held*, that the claim of the trustee that the trust had been fulfilled by his turning over, and by the daughter receiving, the trust fund as necessary for her support and comfort, was not sustained by the findings.

APPEAL from a decree of the probate court for the District of Addison upon the settlement of the account of the trustee of a fund created under the will of Charles N. Hayward charging the trustee with the full amount of the principal of the trust fund. Trial by Court at the December Term, 1916, Addison County, *Stanton*, J., presiding. Judgment affirming the decree of the probate court. The appellant excepted. The opinion states the case.

*Edward H. Deavitt* for the appellant.

The power of disposition in the first taker under a will is the determinative element which makes the first taker the absolute owner and the limitation over void for repugnancy. The power to consume is another expression used to convey the same meaning. *Attorney General* v. *Hall*, Fitzgibbins Rep. 314; *Flanders* v. *Clarke*, 1 Ves. Sr. 9; *Cuthbert* v. *Currier*, 1 Jac. 415; *Ross* v. *Ross*, 1 Jac. & Walker 154; *Holmes* v. *Godson*, 8 De.G. M. & G. 152; *Howard* v. *Carusi*, 109 U. S. 725; *Flinn* v. *Davis*, 18 Atl. 132; *Snodgrass* v. *Snodgrass*, (Ind.) 71 N. E. 139; *Rona* v. *Meier*, 47 Iowa 607; *Meyer* v. *Weiler*, 121 Iowa 51; *Luckey* v. *McCray*, 125 Iowa 691; *Galloway* v. *Durham*, (Ky.) 81 S. W. 659; *Combs* v. *Combs et al.*, 67 Md. 11; *Ide* v. *Ide*, 5 Mass. 500; *Bacon* v. *Woodward*, 12 Gray 376; *Bowen* v. *Dean*, 110 Mass. 432; *Jackson* v. *Bull*, 10 Johns. 19; *Jackson* v. *Robins*, 16 Johns. 537, 539; *Helmer* v. *Shoemaker*, 22 Wend. 137; *Jauretche* v. *Proctor*, 48 Pa. St. 466; *Second Reformed Church* v. *Disbrow*, 52 Pa. St. 219; *Stowell* v. *Hastings*, 59 Vt. 494; *Wills* v. *Wills*, (N. J. Eq.) 69 Atl. 256; *Bing* v. *Burrus*, 106 Va. 478; *Killefer* v. *Bas-*

*sett,* 146 Mich. 1; *Conlin* v. *Sowards,* 129 Wis. 320; *Bradley* v. *Warren,* 104 Me. 423; *Kennedy* v. *Pittsburg & L. E. Rd. Co.,* 216 Pa. St. 575.

The word "comfort" means considerably more than "support." *Maynard* v. *Cleaves,* 149 Mass. 307; *Stocker* v. *Foster,* 178 Mass. 591; *Emery* v. *Swasey,* 97 Maine 136; *Forman* v. *Whitney,* 41 N. Y. (2 Keyes) 165, 168.

*Joseph Fairbanks, Porter, Witters & Harvey,* and *Samuel E. Richardson* for the appellee.

A decree of distribution, if properly made after due notice, is in its nature final, and unless set aside for fraud, etc., or appealed from within the time limited by law, it concludes the rights of all parties interested in the estate and cannot be impeached in a collateral proceeding. *Sparrow* v. *Watson et al.,* 87 Vt. 366; *In re Wells Estate,* 69 Vt. 383; *Kennedy* v. *Ward,* 67 Vt. 375; *Hodges* v. *Eddy,* 54 Vt. 434; *Lawrence* v. *Englesby,* 44 Vt. 42; *Lenehan* v. *Spaulding,* 37 Vt. 115; *Richardson, Admr.* v. *Merrill,* 32 Vt. 27; *Abbott* v. *Coburn,* 28 Vt. 663; *Driggs* v. *Abbott,* 27 Vt. 580; *Perkins* v. *Walker,* 19 Vt. 144; *Tyron* v. *Tyron,* 16 Vt. 313; *Probate Court* v. *Vanduzer,* 13 Vt. 135; *Rix* v. *Smith,* 8 Vt. 365; *Robinson* v. *Smith,* 3 Vt. 283.

TAYLOR, J.   This is an appeal from a decree of the probate court for the district of Addison upon the settlement of the account of J. H. Lucia as trustee of a fund created under the will of Charles N. Hayward. The decree charged the trustee with the full amount of the principal of the trust fund and disallowed the major part of his claimed credits. On appeal the county court affirmed the decree, and the appellant brings the case here on exceptions to this judgment.

Charles N. Hayward, in life a resident of Bridport, Vermont, died testate in 1874. By his will he gave to his widow Susan E. Hayward, the use of all his real estate in the town of Bridport during her natural life. After making specific bequests of $1,000 each to five benevolent societies, he provided for his only daughter as follows: "The rest, residue and remainder of all my estate both real and personal I give to my daughter, Emma C. Eldridge, during her natural life, and if she should die leaving no children, it is my will that her share of my estate

shall be divided among the above mentioned benevolent societies; meaning that my daughter may use whatever of said estate that may be necessary for her support and comfort.'' Mrs. Eldridge is a widow about seventy years of age and has no children. For many years she has resided at Colorado Springs in the state of Colorado.

The executor of the will proceeded to settle the estate, and in 1886 petitioned the probate court for permission to sell the Bridport real estate '';for the purpose of putting the avails of said estate in the hands of a trustee.'' Mrs. Hayward, Mrs. Eldridge, and all other parties in interest joined in the petition and formally consented to the sale. The petition was granted, the real estate sold, and Mr. Lucia appointed trustee of the avails. Mrs. Hayward died in 1899. In September, 1903, the trustee filed an inventory in which he gave the amount of the fund as $5,000, after deducting from the avails of the sale $250, which included the expenses of the sale, his services and expenses as trustee to date, and $100, ''allowed Mrs. Eldridge.'' Shortly after the sale the trustee loaned the proceeds to Mrs. Hayward taking her note therefor without interest secured by a trust deed of land in Colorado. The court finds that the trust fund has remained invested on the security of this mortgage deed of trust since May 10, 1887, and that Mr. Lucia's estate has not in its possession, and has not had, any part of the fund except as represented by said deed of trust. Mrs. Eldridge is in possession of the mortgaged real estate.

In 1904 Mrs. Eldridge preferred a petition to the probate court in which she alleged that all or a substantial portion of the trust fund was required for her support and comfort under the will, but that the trustee declined to turn over any portion thereof to her without the order and direction of the court, and asked that the court order the fund or a portion thereof applied to her support and comfort. This petition was dismissed by the probate court, appealed to the county court by the petitioner, and there dismissed without prejudice. In December, 1914, Mrs. Eldridge brought a similar petition to the probate court in which she alleged, among other things, that the funds arising from the sale of the real estate were in the hands of Mr. Lucia as trustee to the amount of $5,000; that the principal of the fund had been loaned by him to her mother and was invested in the real estate at Colorado; and that the trustee declined to turn over to her

any portion of the fund without the court's order. The prayer of the petition was that the trust be executed and the fund turned over to her for the term of her natural life; that she be decreed to hold the fund with all the privileges and subject to all the liabilities of a life tenant, with power to use the principal under the terms of the will; and that she be granted such further and other relief as should be meet in the premises. All parties in interest were served with notice of the proceedings; and on a full hearing the probate court on March 4, 1915, ordered: ''That the five thousand dollars inventoried by J. H. Lucia, trustee, as being in his possession, the resignation of said J. H. Lucia as said trustee being hereby accepted, shall be immediately turned over to his successor, who by agreement of all the parties and appointment of this court is Hon. J. E. Weeks of Middlebury, and that the new trustee should pay to Mrs. Eldridge one thousand dollars forthwith and two hundred dollars annually thereafter, together with the annual income of the residue, this being found necessary for her comfort and support in accordance with the will.'' By the decree Mr. Lucia was held strictly liable for the five thousand dollars but was given the option of transferring to his successor the securities on the real estate in Colorado, which the new trustee was directed to convert into cash as soon as possible. The order of the court was accepted and agreed to in open court by Mrs. Eldridge and the benevolent societies. No appeal therefrom was taken, and the decree remains in full force. Neither the fund nor the securities have been turned over to the new trustee. Mr. Lucia died soon after the decree was made and the appellant became his administratrix. On April 15, 1915, she filed in the probate court an account of Mr. Lucia's trusteeship, which charged him with the principal of the fund and credited him with certain minor expenses, leaving the principal part of the trust fund to be accounted for by the estate. Before a hearing on this account, on November 26, 1915, she filed what purported to be an account ''in amendment of and substitution for'' that already filed, in which she claimed a credit for the balance of the trust fund as paid over by Mr. Lucia from time to time to Mrs. Eldridge, the same being necessary for her support and comfort in accordance with the terms of the will. Appended to this account was a statement signed by Mrs. Eldridge acknowledging the receipt by her from Mr. Lucia in his lifetime of the entire fund, principal

and income, approving the account as rendered, and asking that the same be allowed and the trustee be discharged. The court rejected the amended account, holding the estate liable for the principal of the fund, less expenses, and confirmed the decree of March 4, 1915. Such is the decree from which this appeal is taken.

The appellee, who is the new trustee, pleaded, among other things, the decree of March 4, 1915, in bar of the appellant's claim to a credit for the principal of the fund as paid over to Mrs. Eldridge by Mr. Lucia from time to time during the term of his trusteeship. The findings of the court are silent as to whether a decree of distribution has ever been made by the probate court in the settlement of Charles N. Hayward's estate. From the fact that the appellee relies only upon the decree of March 4, 1915, and our attention has been called to no other, it is fair to assume that there has been no other decree defining the rights and estate of Mrs. Eldridge under the residuary clause of the will. Proceeding upon the theory, as the parties have done, that the construction of this clause of the will is an open question, except possibly for the decree of March 4, 1915, we find it more convenient to consider the questions in the order of their treatment by the appellant in her brief.

The appellant contends that under the residuary clause of the will Mrs. Eldridge took the residue absolutely and in fee, and that the attempted gift over to the benevolent societies is repugnant and void. It is argued that the provision, "meaning that my daughter may use whatever of said estate may be necessary for her support and comfort," gives such power of disposition and consumption as to make the gift to Mrs. Eldridge absolute and the attempted gift over void. Counsel recognizes the doctrine of our cases that a limited power of disposal, as for necessary support, is consistent with a life estate only in the first taker, but argues that the addition of the word "comfort" changes what would otherwise be a limited power to a general power of disposal. The claim is made that the case at bar is like *Stowell* v. *Hastings*, 59 Vt. 494, 8 Atl. 738, 59 Am. Rep. 748, where, construing the provision of a will giving to the testator's wife the residue of the estate "for her benefit and support, to use and dispose of as she may think proper," and providing that if any of the estate should be left in the wife's possession at her death it should be divided between the testator's

brothers and sisters, it was held that the wife took an absolute estate, and that the remainder over was void for repugnancy. But that case is unlike the case at bar, not alone in providing for the disposal of the estate by the wife for her "benefit" as contrasted with "comfort," but the language there employed imports a gift to the wife generally with absolute power of disposition. The attempted disposal of the unused remainder was held repugnant to the estate first granted, and so must be rejected. Here the estate granted to Mrs. Eldridge is expressly limited to her natural life, with remainder over to the benevolent societies, if she leaves no surviving children. The power to use so much of the estate as may be necessary for her support and comfort is consistent with the estate granted. The appellant contends that the word "comfort" is synonymous with "benefit" as used in *Stowell* v. *Haslings;* but it makes very little difference whether the expression "support and comfort" signifies anything more than comfortable support. In any event the intention of the testator to create merely a life estate in Mrs. Eldridge is manifest, and the power of disposal is limited to so much of the principal as should be necessary for her support and comfort, and not absolute and unlimited as in that case. These facts render the cases clearly distinguishable. The case at bar in its essential features is very like *Parks, Admr.* v. *American Home Missionary Society,* 62 Vt. 19, 20 Atl. 107, where a will giving the testator's wife the use of his entire estate during her lifetime, "and so much of the principal as she may see fit to use for her necessary and comfortable support, and for charitable and benevolent purposes," was held to create a life estate and not a fee. It is in line with *Morse* v. *Stoddard's Estate,* 90 Vt. 479, 98 Atl. 991. *In re Keniston's Will,* 73 Vt. 75, 50 Atl. 558, and other cases there cited and reviewed.

We hold that Mrs. Eldridge took a life estate in the residue and not a fee. This disposes of the appellant's main contention. But she claims that, if the will did not give Mrs. Eldridge an absolute estate in fee, when the trustee has turned over all of the principal and the same has been received by Mrs. Eldridge as necessary for her support and comfort, the trust has been fulfilled, and is thereby terminated. It is a sufficient answer to this claim to say that it is unsupported by the findings. It is unnecessary to consider how it would be if the court had found that the trustee had in good faith paid the principal of the fund to

Mrs. Eldridge as necessary for her support and comfort. With this claim squarely before it, the court found in effect that at the very close of Mr. Lucia's incumbency of the trusteeship Mrs. Eldridge was attempting to have the whole or some part of the fund turned over to her as necessary for her support, and secured the order to that end already referred to, which order remains uncomplied with. The express finding that the trust fund remains invested in the mortgage deed of trust, followed by the judgment against the estate, negatives the inference that the appellant seeks to have drawn from the court's statement that "the only evidence of payment to Emma C. Eldridge is her signed statement hereinbefore set forth." The court evidently thought it worthy of notice in passing that the only evidence offered in support of the tardy claim of payment to Mrs. Eldridge was her unsworn statement in the form of a receipt. Viewed in this light, there is ample warrant for the statement, and it is consistent with the findings and judgment. The fact that Mrs. Eldridge signed the writing acknowledging payment to her by Mr. Lucia as trustee would not of its own force exonerate his estate. There were other interests to be protected, and the *fact* of payment was a litigated question. The appellant failed to secure the necessary finding, at best a dubious undertaking in view of the attending circumstances.

These views result in overruling appellant's exceptions, and make it unnecessary to consider the appellee's contention that her claims are barred by the decree of the probate court of March 4, 1915, set out in the findings.

*Judgment affirmed, and ordered certified to the probate court.*