FLORENCE W. TRASK ET AL. *v.* NOAH S. WALKER'S ESTATE.
FLORENCE W. TRASK ET AL. *v.* SARAH A. WALKER'S ESTATE.

May Term, 1925.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed October 19, 1926.

*Findings of Fact—Gifts—Delivery—Effect of Absence of Written Assignment of Bonds and Securities Delivered With Donative Intent—Wills—Construction—Estate in Fee—Vested Rights—G. L. 3260—"True Inventory" of Estate—Witnesses—Competency—G. L. 1891—Waiver of Incompetency—Conclusiveness of Waiver of Competency—Statements of Decedent To Show Gift—Sufficiency of Delivery of Securities—Sufficiency of Evidence To Show Gift of Automobile—Presumption Supporting Court's Findings When Confidential Relations Shown—Sufficiency of Findings To Negative Claim of Influence and Pressure—Court Need Not State Subordinate Facts Where Ultimate Fact Found.*

1. If there is legitimate evidence fairly and reasonably tending to support finding of trial court, it must stand, although Supreme Court might have reached different conclusion from evidence.
2. Finding of trial court that deceased before his death had given or transferred to his wife, or to certain daughter for benefit of his wife, certain of his property, *held* supported by evidence.
3. Against claim that there was no evidence from which gift from deceased to wife, or to daughter for benefit of wife, could be found, because no sufficient delivery had been shown, *held* that execution of deeds and assignments of mortgages to daughter for benefit of wife showed passing of title.

4. Delivery of bonds and securities by donor to donee, accompanied by language indicating donative intent, and acceptance thereof, *held* to pass equitable title to donee, absence of written assignment not making gift incomplete.

5. Fact that after delivery by donor to donee of certain securities, donee handed securities back to donor to put in latter's safe, did not vitiate delivery.

6. Will, stating that testator had theretofore helped and given his children all he intended to help or give them, unless he should outlive his wife, and giving residue and remainder of his property to his wife "for her use and disposal of the same as may seem best to her for her own comfort and convenience," *held* to give wife absolute power of disposal and make her estate one in fee.

7. Where probate court construed will and decreed estate in fee to testator's wife, by use therein of words of inheritance, and no appeal was taken, property rights became vested and cannot be attacked.

8. Where deceased had conveyed real estate to daughter, so that latter became and remained sole and absolute owner thereof, such real estate had no proper place in "a true inventory" of estate of deceased, required by G. L. 3260 to be returned to probate court by executrix.

9. Under G. L. 1891, daughter of deceased was incompetent to testify as a witness in relation to gifts claimed to have been made to her by deceased, unless question of competency was waived.

10. Executor or administrator of estate who calls adverse party and examines him as witness in regard to transactions with decedent, thereby waives statutory incompetence of witness and makes him competent as general witness in case.

11. Where, at hearing before probate court on petition for further accounting, petitioners called executrix as witness and examined her generally as to property of decedent, and also called her as witness in county court and examined her as to her administration of estate, they thereby waived her incompetency, under G. L. 1891, to testify as to gifts made to her by decedent.

12. Where petitioners for further accounting by executrix, had once waived question of her competency as witness under G. L. 1891, they are concluded by such waiver.

13. In hearing on petition for further accounting by executrix, testi-

mony that mother had given certain property to daughter, executrix of mother's will, *held* properly received as evidence of gifts, although not conclusive, such weight to be given it as deemed proper by the triers of fact.

14. Handing over by mother to daughter of notes, secured by mortgages standing in name of daughter as assignee, *held* sufficient delivery.

15. Evidence *held* sufficient to show gift of automobile by mother to daughter.

16. Finding by trial court in hearing on petition for further accounting by executrix, that such of certain securities as did not appear upon account of executrix had been used by decedent, and executrix was therefore not chargeable with them, *held* justified by evidence.

17. Nothing to contrary appearing, it will be presumed that court, in finding that decedent made certain gifts to her daughter, considered confidential relations of parties as well as rule of law applicable thereto, and gave due weight to such legal presumption as might arise from such relations.

18. Findings of trial court that decedent's daughter, as executrix, had accounted for all decedent's property at time of latter's death, and that other decedent's property not so accounted for had been spent by decedent or given to daughter, *held* to negative claim of influence and pressure.

19. Where court found ultimate fact in issue, failure of court to state effect given to subordinate facts, or to report evidence, was not error.

APPEAL from the probate court for the district of Rutland. From a decision of the probate court, dismissing petitions for further accounting in respective estates, plaintiffs in each case appealed to county court. Trial by court at the March Term, 1923, Rutland County, *Chase,* J., presiding, and petitions dismissed. The plaintiffs in each case excepted and appealed. The opinion states the case. *Affirmed and certified back to probate court.*

*Marvelle C. Webber* for appellants.

*Lawrence, Stafford & Bloomer* for appellee.

BUTLER, J.   These are two cases heard together. Each is an appeal from the probate court, dismissing a petition for

further accounting by Adah S. Walker, executrix of the estates of her father and mother, Noah S. Walker and Sarah A. Walker. The petitioners, Florence W. Trask and Jessie W. MacLennan, are the sisters of Adah. They claim that, in the final accounts filed by Adah in each of the two estates, she neglected to account for certain property belonging thereto. The trial court found that she had duly accounted for all the property of the two estates, and the cases are here on exceptions by the petitioners.

By the findings of fact, it appears, that Noah S. Walker died testate, in Clarendon, November 19, 1910, leaving surviving him his widow Sarah A. Walker, then in advanced years, five daughters, and one son. All of the children, except Adah S. Walker, were married and living in homes of their own. Two daughters lived in California, two in Kansas, and the son in Clarendon.

Mr. Walker had been a man of considerable property, consisting largely of mortgage loans on real estate in California and Kansas. To carry out his expressed intention to give his children before he died whatever property he intended them to have directly from him, he gave each child the equivalent of ten thousand dollars in two installments of five thousand dollars each, the first in 1905, the second, not long before his death.

His last will was dated July 2, 1910, and admitted to probate January 10, 1911. Sarah A. and Adah S. Walker were named as joint executrices but Sarah A. declined to act, and Adah qualified and acted as sole executrix and fully settled the estate, the final decree in probate court being dated February 13, 1912. By his will Noah S. Walker provided for a trust fund of fifteen thousand dollars and left to his wife the remainder of his property, but, to quote from the findings:

> "Before he died, however, he had given and transferred to his wife, or to Adah S. Walker, for the benefit of his wife, all of his property not otherwise disposed of by him except that portion which has already been duly accounted for by Adah S. Walker, in her settlement of his estate."

After the death of Noah S. Walker, Adah lived with her mother until the latter's death, June 1, 1918. She spent practically all her time in caring for her mother and her property. She gave up her study of music in Boston and devoted herself

to her mother in a kind and loving way which was perfectly satisfactory and fully appreciated. The property which Sarah A. Walker received from her husband was freely used in travel, repairs on the home place, medical attention for Mrs. Walker, and in whatever way the latter desired. The relations between the mother and daughter were mostly intimate and friendly.

The last will and testament of Mrs. Walker was admitted to probate June 25, 1918. Adah qualified and acted as sole executrix; and, again to quote from the findings:

> "She has already, as executrix of that estate, accounted for all the property Mrs. Walker owned at the time of her death. That not so accounted for, had been spent by Mrs. Walker during her life or given to Adah at different times. These gifts by her to Adah were substantial ones." ·

The findings of fact further state:

> "The entire transcript of the case is hereby referred to and made a part of the findings of fact for the purpose of testing the findings made as to being sustained upon the evidence, and whether the plaintiff is entitled upon the evidence to some or all of the requests for findings, the additional requests and the supplemental requests, and for any proper purpose in connection with the findings of fact; and also so far as it may be proper for the Court to make use of the same with reference to the judgment."

The paragraph in the findings of fact first above quoted is attacked by the petitioners by an exception on the grounds that the evidence is insufficient to support the findings; that there is no sufficient evidence not under objection and exception to sustain the findings; that as a matter of law upon the evidence, the finding is unsupported; and that the finding is too general, indefinite, and vague, and not sufficiently explicit as to what property was so disposed of or as to the facts and circumstances constituting the gift or transfer to enable this Court to say as a matter of law whether Noah S. Walker did so legally dispose of his property, which was not otherwise accounted for.

[1] If there is legitimate·evidence fairly and reasonably tending to support this finding, it must stand. *Hyde Park Lumber Co.* v. *Shepardson,* 72 Vt. 188, 47 Atl. 826; *McGaffey* v. *Mathie,* 68 Vt. 403, 35 Atl. 334; *Kelton, Admr.* v. *Leonard et al.,*

54 Vt. 230. The fact that this Court might have reached a different conclusion from the evidence is not the test. *Platt, Admx.* v. *Shields & Conant,* 96 Vt. 257, 271, 272, 119 Atl. 520.

The evidence showed without dispute that Adah S. Walker as executrix, accounted to the probate court for fifteen thousand dollars, invested in Kansas bonds, which composed the trust fund established by the will of Noah S. Walker for the benefit of his grandchildren, and which securities were subsequently turned over to the trustees for that purpose; for the homestead in Clarendon valued at one thousand dollars, and for four cemetery lots, valued at twenty dollars. It also appeared that at some time prior to his death, Noah S. Walker, in addition to the property accounted for, was possessed of five mortgages upon real estate in California, totaling in amount thirteen thousand, nine hundred dollars; two lots of land in the same state, called the "Dos Robles Lots," which were thereafter sold for nineteen hundred dollars; bonds of two thousand dollars secured by a mortgage upon an apartment house in Chicago, and known as the "Vieto Bonds"; and certain Kansas mortgages other than those constituting the trust fund, the value of which did not appear, which the evidence tended to show constituted the larger part of his estate. These are the items for which the plaintiffs claim an accounting by Adah S. Walker as executrix of her father's estate.

The five California mortgages, as appeared without dispute, were assigned by Noah S. Walker to Adah, July 1, 1910, and the assignments were duly recorded, through the agency of Mr. Trask, husband of one of the plaintiffs, February 3, 1911. The Dos Robles lots were conveyed by Noah S. Walker and Sarah A. Walker, his wife, to Adah by two deeds dated June 2, 1910. These transactions were intended to be for the benefit of Sarah A. Walker, and the assignments and deeds ran to Adah "for convenience" and it was the expectation that she should, in turn, convey to her mother. In fact, assignments of the California mortgages from her to her mother were prepared, but not executed. The reason for the proposed transfer through Adah was the understanding of the latter that the law did not permit a direct conveyance or assignment from a husband to his wife. The assignments from Adah to her mother were never completed, but there was evidence presently to be considered in connection with the exception relating to the finding with regard

to the estate of Sarah A. Walker, that the latter gave ten thousand dollars of these securities to Adah, and that the proceeds of the remainder when paid, were delivered by Adah to her mother.

The Dos Robles lots were deeded by Adah to purchasers in California, by deeds dated November 25 and 29, 1910. Adah testified that the proceeds of the sales, which amounted in all, as has been said, to nineteen hundred dollars, were turned over by her to her mother, and she identified a deposit of twelve hundred dollars in her mother's account in the Rutland County National Bank, under date of August 26, 1911, as a part thereof. Part of the purchase-price was left on mortgage, and a deposit in Mrs. Walker's account in the Rutland Savings Bank of five hundred and twenty-five dollars under date of May 15, 1912, was identified by Adah as being so much of the proceeds of the mortgage when paid.

[2] So far, then, as the five California mortgages and the Dos Robles lots are concerned, it cannot be said that the findings of the trial court that Noah S. Walker, "before his death had given or transferred to his wife or to Adah S. Walker, for the benefit of his wife all his property not otherwise disposed of," is without supporting evidence. There was no written assignment of the Vieto bonds. A few months before his death, and on July 6, 1910, Noah S. Walker sent these bonds to Mr. Hiland Southworth, his agent and son-in-law, in Kansas, for collection. They were in litigation at the time of Mr. Walker's death. After some delay the bonds were paid and the proceeds came into Adah's hands in April, 1917, at which time she testified she gave the money to her mother, and it was reinvested in an Anglo-French bond. Adah testified that in June, 1910, her father took the Vieto bonds from his safe, which was in a hallway adjoining his room, together with other securities, and gave them to her mother. Mrs. Walker then returned them to the safe, of which she did not have the combination, and they there remained until, as Adah testified, at her mother's request they were sent to Mr. Southworth for collection.

The securities which Noah S. Walker took from the safe with the Vieto bonds were the Kansas securities, other than those representing the trust fund. These securities were negotiable in form. There was no written assignment of them. Adah testified that her father gave them to her mother at the time he gave

her the Vieto bonds, and said that he gave them to her and that they were hers.   After this episode, the securities were returned to the safe.

There was evidence from which it might be inferred that Noah S. Walker intended to make distribution of his property before his death.   He had stated shortly before his death to one of his daughters that:

> "He gave his children what he wished them to have, what he thought it was right to give, he made the distribution to the grandchildren and the balance to be our mother's."

He had, shortly before his death, on August 6, 1910, conveyed certain Kansas lands to his wife; and assigned to her through Adah, a mortgage called the Kelley mortgage covering lands in Clarendon, January 3, 1910, and April 1, 1910.   He was suffering, as he well knew, from a mortal ailment, and could not expect long to survive.   His will contained language to the effect that he had theretofore helped and given to his children (naming them) all that he intended to help or give them unless he should survive his wife.   He had so stated in substance to some of his children in writing at the time of the last payment of five thousand dollars to them.

[3]   The petitioners contend that there was no evidence from which a gift from Noah S. Walker to his wife, or to Adah for his wife, could be found as a matter of law, in that no sufficient delivery was shown.   So far as the California mortgages and the Dos Robles lots are concerned this contention is obviously without foundation.   The assignments which were under seal, and deeds, executed by Noah S. Walker clearly show a passing of title from him to Adah.   *Hobart's Admr.* v. *Vail*, 80 Vt. 152, 165, 66 Atl. 820.

[4, 5]   As regards the Vieto bonds and the Kansas securities the evidence showed a delivery of the documents by Noah S. Webster to his wife, accompanied by language indicating a donative intent upon his part.   The fact that there was no written assignment does not make the gift incomplete.   Upon delivery and acceptance of the securities, the equitable title passed to the donee.   *Gledhill* v. *McCoombs*, 110 Me. 341, 86 Atl. 247, 45 L. R. A. (N. S.) 26, Ann. Cas. 1914D, 294; *Grover* v. *Grover*, 24 Pick. (Mass.) 261, 35 A. D. 319; *Bond* v. *Bean et al.*, 72 N. H.

444, 57 Atl. 340, 101 A. S. R. 686; *Reed* v. *Copeland,* 50 Conn. 472, 47 A. R. 663; *Brown* v. *Crafts et al.,* 98 Me. 40, 56 Atl. 213; *First National Bank of Richmond et al.* v. *Holland et al.,* 90 Va. 495, 39 S. E. 126, 55 L. R. A. 155, 86A. S. R. 898; *Herbert, Exr.* v. *Simson et al.,* 220 Mass. 480, 108 N. E. 65, L. R. A. 1915D, 733, and note; *Goodrich's Exr.* v. *Rutland Savings Bank et al.,* 81 Vt. 147, 149, 69 Atl. 651, 17 L. R. A. (N. S.) 181; *Watson* v. *Watson,* 69 Vt. 243, 245, 39 Atl. 201. Nor did the fact that Sarah A. Walker handed the securities back to her husband to put in his safe vitiate the actual delivery. *Grover* v. *Grover,* 24 Pick. (Mass.) 261, 35 A. D. 319; *Scrivens* v. *North Easton Savings Bank et al.,* 166 Mass. 255, 44 N. E. 251; *In re Kaufmann's Estate,* 281 Pa. 519, 127 Atl. 133.

The petitioners excepted to the finding that:

> "She (Adah S. Walker) has already as executrix of that estate (of Sarah A. Walker) accounted for all the property of Mrs. Walker owned at the time of her death. That not so accounted for had been spent by Mrs. Walker during her lifetime or given by her to Adah at different times. These gifts by her to Adah were substantial ones."

The grounds of the exception are substantially the same as those urged in relation to the findings with regard to the property of the Noah S. Walker estate.

The items claimed to be unaccounted for are the home place in Clarendon; the Phillips farm in Tinmouth; certain Kansas real estate; the California loans, referred to above; the Kansas loans, also referred to; the Vieto bonds, also referred to; and an automobile.

[6]   The homeplace was decreed to Sarah A. Walker by the probate court, on the settlement of her husband's estate February 13, 1912. On June 25, 1912, Sarah A. Walker deeded the property to Adah. The objection that petitioners make to this transaction is that under the will of Noah S. Walker his widow took only a life estate in this particular property. The homeplace was included in the residue of Noah's estate. The provision in his will with respect to this was as follows:

> "It is my will that all the residue and remainder of my estate, household, personal and real estate wherever situated, shall be decreed to my wife Sarah A. Walker by the Probate

Court for her use and disposal of the same as may seem best to her for her own comfort and convenience. I having heretofore helped and given to my children (naming them) all that I intend to help or give to them unless I should outlive my wife Sarah A. Walker, in which case said estate so willed to her to be equally divided between said named six (6) children or their bodily heirs.''

The decree of the probate court contained the following:

"To the said Sarah A. Walker, widow, the real estate as above described—to have and to hold the same as aforesaid to - - - - Sarah A. Walker, her heirs, executors, administrators, and assigns, according to law and said will.''

The petitioners contend that, by the terms of the will above quoted, Sarah A. Walker took only a life estate in the residue of her husband's estate, and her interest being limited to her use and disposal as might seem best for her comfort and convenience, she could not give any part of it to Adah.

But the manifest intention of the testator was otherwise. He provided in his will for no estate in remainder, but therein stated specifically that he had theretofore helped and given his children all that he intended to help or give them, unless he should outlive his wife. He gave his wife an absolute power of disposal. We think that Sarah A. Walker took an estate in fee in the residue. *Stowell* v. *Hastings,* 59 Vt. 494, 8 Atl. 738, 59 A. R. 748. Of the cases cited by the petitioners, *Parks, Admr.* v. *American Home Missionary Society et al.,* 62 Vt. 19, 20 Atl. 107, and *In re Haywards' Estate,* 93 Vt. 404, 108 Atl. 345, may be distinguished, because in each of them the testator expressly devised and bequeathed a life estate; and in *Morse* v. *Stoddard's Estate,* 90 Vt. 479, 98 Atl. 991, and *In re Keniston's Will,* 73 Vt. 75, 50 Atl. 558, the apparently absolute bequests were limited by subsequent provisions in the wills, making it clear in each case that the intention of the testator was to give a life estate only.

[7]   And, furthermore, by its decree, the probate court construed the will, and decreed an estate in fee, by the use therein of words of inheritance. *Sparrow* v. *Watson et al.,* 87 Vt. 366, 89 Atl. 468; *Ward et ux.* v. *Congregational Church et al.,* 66 Vt. 490, 29 Atl. 770. No appeal having been taken, the property rights have vested thereunder and cannot now be attacked. It

was said in *Leavins, Guardian* v. *Ewins et al.,* 67 Vt. 256, 257, 31 Atl. 297:

> "In making the decree of 1874 (of distribution) the probate court undertook to decree the estate according to the legal effect of the will. It had jurisdiction to make a decree distributing the estate, and its decree, unappealed from, was binding upon all parties. The construction given to the will was legal construction, and became the law governing the distribution of the estate. If there was an error in the distribution of the estate, it was an error of law; and the remedy was by appeal to the higher court. No appeal having been taken, the law as then interpreted by the court became the law of the case. The construction thus given to the will was a judicial construction. Property rights vested under it; and for error in that construction, they cannot now be disturbed."

Other authorities to the same effect are *Sparrow* v. *Watson et al.,* 87 Vt. 366, 89 Atl. 468; *Stone* v. *Estate of Peasley,* 28 Vt. 716; *Ward et ux.* v. *Congregational Church et al.,* 66 Vt. 490, 29 Atl. 770; and *In re Warner's Estate,* 98 Vt. 254, 268, 127 Atl. 362.

[8] It follows that the conveyance from Mrs. Walker to Adah covering the home place vested title in the latter, who then became, and, as the findings show, thereafter remained the sole and absolute owner of the property. Mrs. Walker had neither title nor any interest or ownership therein at the time of her death, and, consequently it was not real estate which could have a proper place in "a true inventory" of the property of her estate required by G. L. 3260 to be returned to the probate court by the executrix.

The same is true of the Phillips farm in Tinmouth, which belonged to Sarah A. Walker in her own right, and was deeded by her to Adah, March 3, 1917; and of the Kansas real estate, which was conveyed by Mrs. Walker to Adah, February 26, 1917.

The manner in which Noah S. Walker divested himself of the California loans, the Kansas loans, and the Vieto bonds, has already been considered.

[9, 10] The gifts above mentioned from Mrs. Walker to Adah, rest largely on the testimony of Adah uncorroborated except in some parts by the testimony of her sister, Mrs. South-

worth. Adah's testimony was received under the plaintiff's objection that Mrs. Walker having deceased, Adah was incompetent to testify as a witness in relation to the gifts under the statute (G. L. 1891), and this is so, unless her competency was waived. *Rooney, Admr.* v. *Minor,* 56 Vt. 527; *Keepers* v. *Fidelity Title & Deposit Co.,* 56 N. J. Law, 302, 28 Atl. 585, 23 L. R. A. 184, 44 A. S. R. 397. It appears from the transcript that at the hearing in the probate court, the petitioners called Adah to the stand and examined her generally as to the property of the decedent, and in the county court she was called by petitioners and examined as to her administration of the estate. An executor or administrator of an estate whether suing or defending who calls the adverse party and examines him as a witness in regard to transactions with the decedent, thereby waives the statutory incompetency of the witness and makes him competent as a general witness in the case. *Comstock's Admr.* v. *Jacobs,* 89 Vt. 133, 137, 94 Atl. 497, Ann. Cas. 1918A, 465.

[11, 12] There would appear to be no reason why the same rule should not be applied when the executor is improved as a witness generally as to the property of the estate as well as to property for which it is claimed he had failed to account, for the reason of the rule may well be applied. Having admitted that she received the property, it would be unjust to refuse to receive her explanation as to why it was not included therein. The complainants having once waived the statutes are concluded by their waiver. There was no error.

[13] The testimony of Mrs. Southworth, sister of Adah, was also received under exception by petitioners. This was to the effect that Sarah A. Walker had said to the witness that she had given certain of the property in question to Adah. This evidence was properly received. It was not conclusive evidence of the claimed gifts, but it was for consideration by the triers of the facts and was to be given such weight as they thought it ought to receive. *Rooney* v. *Minor, supra; Scott* v. *Berkshire Co. Sav. Bk.,* 140 Mass. 157, 2 N. E. 925; *First National Bank of Richmond et al.* v. *Holland et al., supra.*

The California loans which had been assigned to Adah by her father, were not assigned by her to her mother. The income from them, as the evidence tended to show, was used by Adah and her mother for their joint expenses. Mrs. Walker had heavy medical and hospital expenses, growing out of two opera-

tions. The two women also traveled extensively, and substantial sums were expended upon repairs and furnishings for the home place. Mrs. Walker was 82 years of age at the time of her death and Adah was her constant companion, and cared for her at all times after the death of Mr. Walker.

[14]   Adah testified that, about three months after her father's death, her mother gave ten thousand dollars worth of these securities to her. They already stood in her name as assignee. She was corroborated by Mrs. Southworth, who testified that Mrs. Walker talked about the securities and said that she had given ten thousand dollars of them to Adah, and that she wished to provide a home and maintenance for her. That this evidence was admissible, we have already seen. Adah received the interest, as it became due, and the principal when paid, and reinvested such principal in other California securities in her own name. The handing over of the notes, secured by the California mortgages by Sarah A. Walker to Adah, as the latter testified, was a sufficient delivery. See cases cited above on this point.

The evidence further tended to show that Sarah A. Walker subsequently gave to Adah another California mortgage, called Pierce mortgage, for seventeen hundred dollars, with which to purchase a piano. Mrs. Walker handed the note and mortgage to Adah, saying that they were hers (Adah's).

[15]   In 1917 Mrs. Walker purchased an automobile. She made the first payment thereon, and Adah testified that her mother gave her a Kansas mortgage to pay the balance. Adah kept the mortgage and made the payment out of her own funds. Mrs. Willcox, Adah's sister, testified that her mother told her that she had ordered the car for Adah, and wished Adah to have it. Adah used the car. There was evidence here tending to show a gift of this car from Mrs. Walker to Adah.

After operating the automobile about three weeks, Adah was implicated in a serious accident while driving. Proceedings to recover damages were brought against her and were settled by her. She testified that her mother gave her the Anglo-French bond of twenty-five hundred dollars, a Kansas mortgage of one thousand dollars, and fifteen hundred dollars in cash, which her mother had on hand, and which had been intended for the purchase of some furniture, towards the settlement of these suits. Adah did not turn over the securities in settlement, but kept

them and paid the equivalent amount of cash out of her own funds.

[16]  The remaining Kansas bonds were not given away by Mrs. Walker. The proceeds, both principal and interest, were used by her, as required, for the traveling expenses of herself and Adah, for her medical and hospital bills, and for repairs and general household expenditures, as found by the trial court. It would serve no purpose to examine these expenses in detail. It is enough to say that there was sufficient evidence to justify the trial court in the finding that such of these securities as did not appear upon the account of the executrix had been used by Mrs. Walker and that, therefore, Adah was not chargeable with them.

The petitioners, in their brief, urged that Adah was a trustee of the California mortgages for her mother, and that the burden is upon her to show that the transaction was fair, and that it was freely and understandingly made, and that Mrs. Walker had competent advice as to the subject-matter of the gift, and invoke the rule that, in the absence of such showing, the presumption arises that the gift was prompted by the influence and pressure of confidential relations. *Wade et al.* v. *Pulsifer,* 54 Vt. 45.

[17, 18]  The relations between Adah and her mother were, no doubt, confidential. But the testimony tends to show many and varied services rendered by Adah to her mother, and that Adah had foregone a musical career, already started, to return home and care for her aged and infirm parents. The court has found the fact of the gifts, and that all the property of Mrs. Walker's estate has been accounted for. It must be presumed nothing to the contrary appearing, that in making this finding, the court had in mind the confidential relations of the parties to the transaction, as well as the rule of law applicable thereto and gave due weight to such legal presumption as might, on the facts, have arisen. *Hobart's Admr.* v. *Vail,* 80 Vt. 152, 66 Atl. 820. The finding, as made, negatives the claim of the existence of influence and pressure.

[19]  The petitioners filed in all 80 requests for findings of fact, asking therein that the trial court should report practically all the subordinate facts, and the evidence relative to the various transactions in issue. While the court might properly have dealt more in detail with some of the matters, yet it was not required

to go to the extent requested. The ultimate fact in issue, namely, that the executrix had fully accounted, was found. Error does not appear in the failure of the court to state the effect given the subordinate facts or to report evidence. *In re Bugbee's Will*, 92 Vt. 175, 182, 102 Atl. 484; *Town of Mt. Holly* v. *Town of Cavendish*, 92 Vt. 38, 102 Atl. 60; *Hall* v. *Windsor Savings Bank*, 97 Vt. 125, 140, 121 Atl. 582, 124 Atl. 593, and cases cited. However, the evidence has been carefully examined, and the petitioners have received the benefit to which they might be entitled under the exceptions saved.

*Judgment in each of the above cases is affirmed and certified back to probate court.*

While Justice TAYLOR sat in hearing of these cases, he deceased before the opinion was written.