RICHARD J. HARRISON *v.* CORA A. HARRISON.

January Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES and STURTEVANT, JJ., and CUSHING, SUPR. J.

Opinion filed February 7, 1939.

*Angelo J. Spero* for the petitioner.

*Ernest E. Moore* for the petitionee.

BUTTLES, J.   This is a petition for annulment of the marriage contracted between the parties before a justice of the peace on October 23, 1937, on the ground that the consent of the petitioner thereto is claimed to have been obtained by force or fraud.

Hearing on the petition was duly had in Rutland county court, findings were made and filed and judgment entered dismissing the petition. The petitioner took exceptions to certain of the findings made, and other exceptions to the court's failure to find in accordance with certain requests to find. He took no exception to the judgment and in coming to this Court has briefed only one exception which is to that portion of the court's ultimate finding which reads as follows: "We are unable to find that the petitioner was entrapped or forced into a marriage ceremony with the petitionee by wrongful threats, deception, or otherwise."

The only ground stated for petitioner's exceptions is that "each of said findings and refusal to find is against the weight of the evidence, unsupported by said evidence, and is contrary to the law and evidence, and that on all of the evidence in the case said finding and refusal to find are not substantiated." As has so often been said this Court does not weigh evidence. The findings of the trial court must stand if there is legitimate evidence fairly and reasonably tending to support them. *Trask v. Walker's Estate,* 100 Vt. 51, 55, 134 Atl. 853; *Hyde Park Lumber Co.* v. *Shepardson,* 72 Vt. 188, 189, 47 Atl. 826; *Kelton, Admr.* v. *Leonard et al.,* 54 Vt. 230, 232. Exceptions which are not briefed are waived. *Valiquette* v. *Smith et al., Trs.,* 108 Vt. 121, 125, 183 Atl. 483; *Bucklin* v. *Narkwich,* 108 Vt. 1, 7, 182 Atl. 207. It follows that we have only the one exception before us, with respect to which the only question here is whether there is any legitimate evidence fairly and reasonably tending to support it.

It appears that the petitioner, for something over a year prior to the date of the marriage, was accustomed to visit the petitionee at rather frequent intervals. At some time during this period the parties commenced having sexual relations and eventually the petitionee became pregnant. The court finds that this condition was the result of her intimacy with the petitioner and the finding is supported by evidence.

Further findings of the court, supported by proper evidence, are in substance that the petitioner was informed of the petitionee's condition and thereafter they had considerable talk about being married. As they were of different religious faiths he told her that he would see a priest to arrange about the matter, and also spoke to her uncle with respect to the matter. Although she knew that he had also been keeping company with another woman, petitionee understood that petitioner would marry her and did not learn otherwise until about one week prior to the marriage when he came to see her, at her request, and then informed her that he intended to marry the other woman. In the meantime, on October 1, 1937, he came to see her, paid her the sum of six hundred dollars and induced her to sign a paper which was introduced in the case as Petr.'s Ex. No. 1, the body of which reads as follows:

"I hereby acknowledge payment of $600 paid me by Richard Harrison. Above payment is to cover birth and care of a child to be born to me. I also release the above Mr. Harrison from any further responsibility or care pertaining to me or child to be born to me. I also promise not to molest Mr. Harrison or any of his family in any manner whatsoever."

The court found that petitioner told her on that occasion that he wished her to take the money until he could get matters straightened out and they could get married, and that he left her under the impression that they were to be married later, though the petitioner himself then had no intention of marrying her. The court further finds that the petitioner obtained her signature to the paper by fraud, and that she would not have signed it had she understood that thereby petitioner would refuse to marry her and legitimatize her child. These findings are supported by legitimate evidence.

Within a few days after the petitionee was told by the petitioner that he would not marry her, she went to a lawyer and was told that, under the existing circumstances, the paper which she had signed was not binding upon her. She then swore out a bastardy complaint against the petitioner and on the day of the marriage, with the bastardy papers in her possession, she went with her uncle to Rutland where they secured the services of a local sheriff and the three of them called on the petitioner. Petitioner was informed as to the nature of the process which the officer held, and the procedure which would be followed, including his arrest and the necessity for his furnishing bail or going to jail, if the process was served, which he was told would be done unless he elected to marry the petitionee. It is not claimed that any false information was given him or that he was threatened with anything not warranted by the mandate of the process which the officer held and by the law governing procedure in such cases. He was refused opportunity to see a certain lawyer prior to the service of the process, but they went to see two other lawyers, who were justices of the peace, relative to performing the marriage ceremony, and he had opportunity to talk alone with one of them. After considerable discussion between the petitioner and each of his visitors he elected to marry the

petitionee, and the necessary arrangements having been made, the ceremony was performed at about seven o'clock that evening. The court finds that petitioner was induced to marry the petitionee partly by fear of the possible effect of his arrest on his grandfather, who was ill, and by a desire to avoid going to jail. After the ceremony the parties separated and they have not since cohabited.

■ "Where a man marries under the threat of or constraint from a lawful prosecution for seduction or bastardy he cannot avoid the marriage on the ground of duress, but it is otherwise in the case of a prosecution which was instituted maliciously or without probable cause." 38 C. J. 1305. To this effect are many cases including *Griffin* v. *Griffin,* 130 Ga. 527, 61 S. E. 16, 16 L. R. A. (N. S.) 937, 14 Ann. Cas. 866; *Wimbrough* v. *Wimbrough,* 125 Md. 619, 94 Atl. 168, Ann. Cas. 1916E, 920; *Frost* v. *Frost,* 42 N. J. Eq. 55, 6 Atl. 282. In *Ingle* v. *Ingle,* (N. J. Ch.) 38 Atl. 953, 954, it is said: "Where a man has been guilty of illicit intercourse with a woman, and marries her under the constraint of either civil or criminal proceedings based thereon, such constraint does not of itself constitute a valid ground for annulling the marriage."

■■ Every reasonable intendment is in favor of the judgment, which cannot be reversed unless all reasonable intendments are against it. *Manley Bros. Co., Inc.* v. *Somers,* 100 Vt. 292, 297, 137 Atl. 336. It is apparent that we cannot say that the challenged finding of the court, upon which the judgment depends, is wrong, unless the claimed release, signed by the petitionee, compels the inference that the threatened prosecution of the petitioner was malicious or without probable cause. But the signature to the release having been obtained by fraud that document does not compel such inference.

■ The petitioner now attempts to rely upon the claim that the release, even though obtained by fraud, remained a bar to the petitionee's prosecution of the petitioner because there was no refund of the consideration paid. This claim relates to a possible defense to the petitionee's proceeding against the petitioner had that proceeding been commenced by service of process and been brought to trial. Such a possible defense is not determinative of the petitionee's malice or lack of probable cause for such contemplated proceeding. The court finds that

the petitionee was willing to return to him the six hundred dollars which had been paid her, if he so desired. A formal tender, if required, might have been made before the action was actually commenced.

■■ The burden of proof being upon the petitioner, it was incumbent on him to obtain a finding from the court that the contemplated prosecution was malicious or without probable cause. This he did not do, nor have we before us any exception to the refusal or failure of the court to find in accordance with any request for such a finding. Moreover, no such claim as the petitioner now makes regarding repayment of the six hundred dollars is stated or suggested by the exception briefed or by the stated grounds therefor. The claim, therefore, is not before us for consideration.

The case of *Shoro* v. *Shoro,* 60 Vt. 268, 14 Atl. 177, 6 A. S. R. 118, upon which the petitioner relies, is readily distinguishable. In that case there was a positive finding by the court, apparently unchallenged, that the petitioner, a boy sixteen years of age, had never had sexual intercourse with the petitionee either before or after the marriage. From this finding the conclusion would be imperative that the bastardy proceeding in that case had been brought maliciously and without probable cause.

*Judgment affirmed.*